Case No. 25-2539

# In The United States Court Of Appeals For The Ninth Circuit

THE ESTATE OF TONNY STOREY, *et al.*,

*Plaintiff-Appellants,*

v.

AMAZON.COM, INC., *et al.*,

*Defendant-Appellees.*

On Appeal from the United States District Court
For the Western District of Washington, Seattle Division

# BRIEF OF THE PLAINTIFF-APPELLANTS THE ESTATE OF TONNY STOREY

Adam J. Berger
Lindsay L. Halm
**SCHROETER GOLDMARK & BENDER**
401 Union Street
Suite 3400
Seattle, Washington 98101
Telephone: (206) 622-8000

Irwin B. Levin
Scott D. Gilchrist
Gabriel A. Hawkins
**COHENMALAD, LLP**
One Indiana Square
Suite 1400
Indianapolis, Indiana 46208
Telephone: (317) 636-6481

**COUNSEL FOR THE ESTATE OF TONNY STOREY**

**STATEMENT REGARDING ORAL ARGUMENT**

Plaintiff-Appellant the Estate of Tony Storey ("Storey") believes this Court would benefit from oral argument.

i

## TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT ............................................... i

TABLE OF CONTENTS ............................................................................... ii

TABLE OF AUTHORITIES .......................................................................... iv

STATEMENT OF JURISDICTION .................................................................. 1

    Jurisdiction Below ......................................................................... 1

    Jurisdiction on Appeal ................................................................... 1

STATEMENT OF ISSUES ON APPEAL ......................................................... 1

STATEMENT OF CASE .............................................................................. 2

    I.    Tonny Purchases an Expedited Order ................................... 2

    II.    The Terms of Tonny's Purchase ......................................... 4

    III.  Procedural History ............................................................. 5

SUMMARY OF ARGUMENT ....................................................................... 6

ARGUMENT ............................................................................................ 8

    I.    Breach of Contract ............................................................. 8

        A.   "Guaranteed" is not a Prerequisite ............................ 9

            1.  Amazon Failed to Incorporate its Help Page .............. 11

            2.  The inclusion of "Guaranteed" is not a Precondition ... 12

            3.  Amazon Never Includes "Guaranteed" ....................... 13

        B.   Refunds ..................................................................... 13

            1.  Refund is not an Element of Breach of Contract .......... 14

2.  A Refund Request is not a Condition Precedent ............................. 15

C.  Delivery was Required within a Specified Window .............................. 16

1.  A Specified Window is not a "Preference" .................................. 16

2.  Extrinsic Evidence ............................................... 19

3.  Amazon's Performance Belies its Claimed Interpretation ....... 20

II.  The CPA .................................................................. 21

A.  The District Court's Basis for Dismissal ............................. 22

B.  Amazon's Inclusion of a Window is Deceptive ............................. 24

CONCLUSION ............................................................................. 25

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) ..................................... 26

CERTIFICATE OF SERVICE ............................................................. 27

## TABLE OF AUTHORITIES

*Cases*

*Adler v. Fred Lind Manor*,
103 P.3d 773 (Wash. 2004) .................................................................. 18

*AGCS Marine Ins. Co. v. Expeditors Int'l Ocean, Inc.*,
470 F.Supp.3d 1210 (W.D. Wash. 2020) .......................................... 18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .............................................................................. 8

*Benavidez v. Cnty of San Diego*,
993 F.3d 1134 (9th Cir. 2021) ............................................................ 8

*Borton & Sons, Inc. v. Burbank Prop., LLC*,
444 P.3d 1201 (Wash. Ct. App. 2019) ............................................ 19

*Fed. Trade Comm'n v. Colgate-Palmolive Co.*,
380 U.S. 374 (1965) ............................................................................ 24

*Fed. Trade Comm'n v. Cyberspace.Com LLC*,
453 F.3d 1196 (9th Cir. 2006) .......................................................... 22

*Hangman Ridge Stables, Inc. v. Safeco Title Ins. Co.*,
719 P.2d 531 (Wash. 1986) ............................................................... 21

*Haywood v. Amazon.com, Inc.*,
2023 WL 4585362 (W.D. Wash. July 18, 2023) ............................ 21

*Hickcox-Huffman v. US Airways, Inc.*,
855 F.3d 1057 (9th Cir. 2017) .......................................................... 14

*Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.*,
170 P.3d 10 (Wash. 2007) ................................................................. 23

*Johnston v. Beneficial Mgmt Corp. of Am.*,
538 P.2d 510 (Wash. 1975) ............................................................... 24

*Keyes v. Bollinger*,
640 P.3d 1077 (Wash. Ct. App. 1982) ............................................ 24

iv

*Klem v. Wash. Mut. Bank*,
  295 P.3d 1179 (Wash. 2013) ............................................................ 21

*Klutho v. S'west Airlines Co.*,
  2020 WL 6703283 (E.D. Mo. Nov. 13, 2020) ................................ 14

*Knievel v. ESPN*,
  393 F.3d 1068 (9th Cir. 2005) ........................................................ 8

*Larson v. Union Inv. & Loan Co.*,
  10 P.2d 557 (1932) ........................................................................... 8

*Leingang v. Pierce Cnty Med. Bureau, Inc.*,
  930 P.2d 288 (Wash. 1997) ....................................................... 21, 23

*Lilly v. Conagra Foods, Inc.*,
  743 F.3d 662 (9th Cir. 2015) ........................................................ 23

*McCormick v. Dunn & Black, P.S.*,
  167 P.3d 610 (Wash. Ct. App. 2007) ............................................ 11

*MDY Indus., LLC v. Blizzard Ent., Inc.*,
  629 F.3d 928 (9th Cir. 2011) ........................................................ 15

*N'west Indep. Forest Mfgs. v. Dep't of Labor and Indus.*,
  899 P.2d 6 (Wash. Ct. App. 1995) ................................................. 8

*Quinn v. Cherry Lane Auto Plaza, Inc.*,
  225 P.3d 266 (Wash. Ct. App. 2009) ............................................ 15

*Raab v. Nu Skin Enter., Inc.*,
  536 P.3d 695 (Wash. Ct. App. 2023) .............................................. 8

*Seabury & Smith, Inc. v. Payne Fin. Group, Inc.*,
  393 F.Supp.2d 1057 (E.D. Wash. 2005) ....................................... 19

*Starr v. Baca*,
  652 F.3d 1202 (9th Cir. 2011) ........................................................ 8

*Storti v. Univ. of Wash.*,
  330 P.3d 159 (Wash. 2014) ............................................................ 17

*State v. Mandatory Poster Agency, Inc.,*
    398 P.3d 1271 (Wash. Ct. App. 2017) ................................................ 22

*Tacoma Northpark, LLC v. NW, LLC,*
    96 P.3d 454 (Wash. Ct. App. 2004) ................................................ 15

*Thatcher v. Salvo,*
    116 P.3d 1019 (Wash. Ct. App. 2005) ................................................ 15

*U.S. Bank Nat'l Ass'n v. Lissak,*
    2015 WL 4093401 (Wash. Ct. App. 2015) ................................................ 11

*U.S. Bank Nat'l Ass'n v. Roosild,*
    487 P.3d 212 (Wash. Ct. App. 2021) ................................................ 15

*Wagner v. Wagner,*
    621 P.2d 1279 (Wash. 1980) ................................................ 17

*William v. Gerber Prod. Co.,*
    552 F.3d 934 (9th Cir. 2008) ................................................ 23

*Wright v. Lyft, Inc.,*
    406 P.3d 1149 (Wash. 2017) ................................................ 21

*Young v. Toyota Motor Sales, U.S.A.,*
    472 P.3d 990 (Wash. 2020) ................................................ 21

### Statutes

28 U.S.C. § 1291 ................................................ 1

28 U.S.C. § 1332 ................................................ 1

RCW § 19.86.020 ................................................ 21

### Court Rules

Fed. R. App. Proc. 4 ................................................ 1

Fed. R. App. Proc. 25 ................................................ 27

Fed. R. App. Proc. 32 ................................................ 26

Fed. R. Civ. Proc. 12 ................................................................................................... 8

### Secondary Sources

Restatement (Second) of Contracts § 203 ......................................................... 18

Restatement (Second) of Contracts § 224 ......................................................... 15

Restatement (Second) of Contracts § 344 ......................................................... 14

## STATEMENT OF JURISDICTION

*Jurisdiction Below.* Storey is an Indiana legal entity that maintained the underlying case as a class action with a proposed class of more than 100 members, and the matter in controversy underlying Storey's complaint exceeds $5,000,000 exclusive of interest and costs. 4 EXCP 416-19, 429. Conversely, Amazon.com Services LLC ("Amazon") is a Delaware corporation with its principal place of business in Washington. *Id.* at 428. Accordingly, the district court had subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. section 1332(d).

*Jurisdiction on Appeal.* The district court dismissed Storey's breach of contract claim with prejudice on June 7, 2024. 1 EXCP 27. The district court then issued a final order dismissing Storey's Consumer Protection Act ("CPA") claim with prejudice on March 21, 2025. *Id.* at 13. Storey filed its notice of appeal on April 18, 2025. 3 EXCP 448-73. Accordingly, this Court has appellate jurisdiction pursuant to Federal Rule of Appellate Procedure 4 and 28 U.S.C. section 1291.

## STATEMENT OF ISSUES ON APPEAL

1. Did Amazon have a contractual obligation to deliver tea to Tonny Storey ("Tonny") between 4:00 a.m. and 8:00 a.m. arising from the fact that Tonny paid a premium to have his tea delivered within this window?

2. Did the district court err when it dismissed Storey's CPA claim notwithstanding conduct on the part of Amazon that would lead a reasonable consumer to believe Amazon promised to deliver Tonny's tea within a specific window?

1

## STATEMENT OF CASE

On March 27, 2023, Tonny ordered tea from Amazon. Amazon presented Tonny with the option of an expedited delivery wherein he could pay an additional $2.99 to have his tea delivered between 4:00 a.m. and 8:00 a.m. on the following day. Tonny paid an additional $2.99, and Amazon informed him that his tea would be delivered between 4:00 a.m. and 8:00 a.m. Amazon neither delivered Tonny's tea during the specified window nor returned the premium Tonny paid for expedited delivery. Whether Tonny's premium gave rise to a contractual obligation for Amazon to deliver his tea within the specified window and whether Amazon's practice of charging a $2.99 premium for delivery during a specific time window was likely to mislead a reasonable consumer are the basic questions presented by this appeal.

### I. Tonny Purchases an Expedited Order

On March 27, 2023, Tonny purchased "Stash Tea Fruity Herbal Tea 6 Flavor Tea Sampler, 6 boxes with 18-20 Tea Bags" from Amazon for $19.99. 2 EXCP 293. As an Amazon Prime member, Tonny was offered four delivery options. *Id.* Tonny was presented two overnight "Fastest Delivery" options and could elect a 4:00 a.m. to 8:00 a.m. delivery window or a 7:00 a.m. to 11:00 a.m. window. *Id.* The Fastest Delivery options required Tonny to pay an additional premium of $2.99. *Id.* Tonny was also offered two free delivery options of June 29, 2023 and June 30, 2023. *Id.*

Amazon's delivery options were presented to Tonny by way of a checkout page that provided:



*Id.* at 256.  Below this checkout page, Amazon includes a statement indicating "[b]y placing your order, you agree to Amazon's . . . conditions of use."  *Id.*

Amazon induces its customers to pay a premium for expedited shipments by way of its offered delivery window, as the ability to select a specified window not only allows customers to ensure that their purchase is received in time for its intended use but also allows customers to be present when it is delivered and to protect against "porch piracy" by preventing their purchase from sitting unattended outdoors.  *Id.* at 137, 155.

Tonny chose Amazon's earliest delivery option, elected to have his tea delivered between 4:00 a.m. and 8:00 a.m., and paid an additional $2.99.  *Id.*  Amazon then issued a 7:57 p.m. "Order Confirmation" indicating Tonny's tea would arrive between 4:00 a.m.

3

and 8:00 a.m. on March 28, 2023 and a second confirmation that again informed Tonny his tea would arrive within this window. *Id.* at 297-98.

At 7:33 a.m. on the following day, Amazon informed Tonny his tea was "on the way but running late" and expected to be delivered at 11:00 a.m. *Id.* A few hours later, Amazon issued a delivery confirmation that informed Tonny his tea arrived at 1:01 p.m. *Id.* at 299-300. Amazon failed to return the premium paid by Tonny notwithstanding the fact that it missed his chosen window by five hours. *Id.* at 302.

II.    *The Terms of Tonny's Purchase*

Amazon's website includes terms governing Tonny's purchase and instructs:

**By using the Amazon Services, you agree, on behalf of yourself and all members of your household and others who use any Service under your account, to the following conditions.**

*Id.* at 289. Amazon further provides "Delivery Guarantees" and states:

**We offer guaranteed delivery on certain delivery speeds and select products. When guaranteed delivery is available on an order, we'll state this on the checkout page, with the associated delivery date and cost.**

**If we provide a guaranteed date and a delivery attempt isn't made by this date, we'll refund any shipping fees associated with that order . . .**

**See Guaranteed Delivery Terms and Conditions for more details.**

*Id.* at 290. Amazon's Guaranteed Delivery Terms and Conditions provide:

**If we provide a guaranteed delivery date on this checkout page, your shipping fees may be refunded if we miss our promised delivery date.**

**The following requirements must be met to qualify for a delivery guarantee refund:**

- **Shipping method selected is shipping option advertised on a product detail page.**
- **Order is shipping to eligible address.**

4

- **Order is placed before "order within" countdown listed on the checkout page. The "order within" countdown timer provides the window of time in which you must place your order to receive your delivery by the date shown . . .**
- **If you [sic] order contains items that aren't eligible for guaranteed delivery, shipping preference "Ship my items as they become available" is selected.**
- **Your credit or debit card must be successfully charged before the deadline displayed on the checkout page.**
- **The guarantee does not apply if we miss our promised delivery date because of an unforeseen circumstance outside of our control, such as a strike, natural disaster, or severe winter storm. Also delivery scans might be inaccurate.**
  - **An attempted delivery on or before the guaranteed delivery date meets our delivery obligation.**
  - **An offer by the carrier of a delivery appointment on or before the guaranteed delivery date meets our delivery guarantee.**

**To inquire about a refund of the shipping fees you paid on this order, contact us and select An Order I Placed. Choose your order, then select Problem with an order > Shipping or delivery issues > Shipment is late.**

*Id.* at 246. Finally, a separate section of Amazon's website contains a "Help & Customer Service" page with a window providing "Place and Order with Guaranteed Delivery." *Id.* at 243. The third paragraph of this window provides, "**[o]n the checkout page, select the guaranteed shipping option. Your delivery date will state guaranteed and be displayed on the final page before you place the order**." *Id.*

III. *Procedural History*

On September 15, 2023, Tonny filed a class action complaint against Amazon in the Superior Court of Washington. 3 EXCP 425-46. On October 4, 2023, Amazon removed Tonny's complaint to the Western District of Washington. *Id.* at 413-21.

5

Tonny filed an amended complaint on January 9, 2024 and, therein, brought claims for breach of contract, good faith and fair dealing, unjust enrichment, and CPA violations. 2 EXCP 285-13. Amazon moved to dismiss on February 9, 2024, and the district court dismissed Tonny's breach of contract, good faith and fair dealing, and unjust enrichment claims with prejudice on July 7, 2024 but afforded Tonny leave to amend his CPA claim. *Id.* at 234-84; *see also* 1 EXCP 13-26.

On July 8, 2024, Tonny filed his second amended complaint and, therein, brought CPA allegations. 2 EXCP 134-61. Tonny passed away, and Storey was substituted as the named plaintiff on August 23, 2024. *Id.* at 124-33. On the same day, Amazon moved to dismiss Storey's second amended complaint, and the district court dismissed Storey's complaint with prejudice on March 21, 2025. *Id.* at 77-96; *see also* 1 EXCP 12. Storey timely filed its notice of appeal on April 18, 2025. 3 EXCP 448-76.

## SUMMARY OF ARGUMENT

The district court dismissed Storey's breach of contract claim predicated upon its conclusion that Tonny's order did not qualify for guaranteed delivery because the terms that govern it required Tonny's checkout page to explicitly state that his delivery was "guaranteed" and Tonny's checkout page contained no such statement. The elements giving rise to a guaranteed delivery, however, are spelled out by way of the bullet points contained in Amazon's Guaranteed Delivery Terms and Conditions, and there is no requirement that a customer's checkout page state that delivery is "guaranteed."

The district court also dismissed Storey's breach of contract claim predicated upon its conclusion that there is no provision giving rise to an automatic refund. Amazon's Delivery Guarantees, however, provide that "[i]f we provide a guaranteed delivery date and a delivery attempt isn't made by this date, we'll refund any shipping fees associated with that order." Of equal importance, this Court admonishes that a contract need not contain a refund provision to give rise to a breach of contract claim. Thus, Amazon's contract need not contain a refund provision.

Amazon also contends that Storey's breach of contract claim should be dismissed because it only promises delivery on a general date rather than within a specific window. While the terms of Amazon's contract reference only a general date, Amazon's checkout page includes a specific window. Washington law unequivocally provides that, when a contract contains specific and general provisions, the specific provisions prevail. Likewise, courts look to extrinsic evidence when a contract is ambiguous, and extrinsic evidence not only discloses that Amazon twice indicated Tonny's tea would be delivered within a specific window and that Tonny's delivery was "late" but also demonstrates that it is impossible to square Amazon's interpretation with its delivery options. As correctly noted by the district court, Amazon would not have informed Tonny his delivery was "late" if it did not have an obligation to deliver his tea within its offered window.

Finally, Amazon's practice of rendering its promised delivery option contained on its checkout page illusory by predicating it upon a "guaranteed" notification that is never

7

included on Amazon's form checkout page is likely to mislead a reasonable consumer and gives rise to a viable CPA claim.

## ARGUMENT

When adjudicating a Rule 12(b)(6) motion, this Court accepts all factual allegations in the complaint as true and construes pleadings in the light most favorable to the nonmovant. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). A plaintiff is required to allege only "enough facts to state a claim to relief that is plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Likewise, "the factual allegations that are taken as true must plausibly suggest an entitlement to relief." *Id.* Finaly, this Court reviews a Rule 12(b)(6) ruling de novo. *Benavidez v. Cnty of San Diego*, 993 F.3d 1134, 1141 (9th Cir. 2021).

### I. Breach of Contract

To prevail on a breach of contract claim, a plaintiff must establish 1) a duty imposed by a contract; 2) breach; and 3) damages proximately caused thereby. *N'west Indep. Forest Mfgs. v. Dep't of Labor and Indus.*, 899 P.2d 6, 9 (Wash. Ct. App. 1995) (citing *Larson v. Union Inv. & Loan Co.*, 10 P.2d 557 (1932)). Washington follows the objective manifestation theory of contractual interpretation and focuses on the reasonable meaning of the contract language to determine the party's intent at the time they entered into the agreement. *Raab v. Nu Skin Enter., Inc.*, 536 P.3d 695, 709 (Wash. Ct. App. 2023).

8

*A. "Guaranteed" is not a Prerequisite*

The district court dismissed Storey's breach of contract claim predicated upon its conclusion that Tonny's order did not qualify for guaranteed delivery because the terms that govern his order required his checkout page to explicitly state that delivery was "guaranteed." 1 EXCP 18-19. To this end, the third paragraph of Amazon's Help & Customer Service page provides instructions for placing an order while stating, "[y]our delivery date will state 'guaranteed' and be displayed on the final page before you place the order." 2 EXCP 243. Thus, the district court concluded that Amazon's help page added to the listed elements for guaranteed delivery in Amazon's Guaranteed Delivery Terms and Conditions and dismissed Stoney's complaint because Tonny's checkout page did not contain the "guaranteed" notation referenced on Amazon's help page.

There are multiple problems with the district court's stated basis for dismissal and chief among them is that it materially alters the terms of the agreement by adding an element that does not exist. Demonstrative of the expansion of Amazon's contract, Amazon's Guaranteed Delivery Terms and Conditions specifically set forth the eight elements that must be present to qualify for a guaranteed delivery as follows:

> **The following requirements must be met to qualify for a delivery guarantee refund:**
> - **Shipping method selected is a shipping option advertised on a product detail page.**
> - **Order is shipping to eligible address.**
> - **Order is placed before "order within" countdown listed on the checkout page. The "order within" countdown timer provides the window of time in which you must place your order to receive your delivery by the date shown. That delivery date may**

> become unavailable within that window of time due to changes in inventory or delivery capacity before you place your order. Your confirmed delivery date is included in your order confirmation email. Contact us with any concerns.
>
> - If you [sic] order contains items that aren't eligible for guaranteed delivery, shipping preference **"Ship my items as they become available"** is selected.
> - Your credit or debit card must be successfully charged before the deadline displayed on the checkout page.
> - The guarantee does not apply if we miss our promised delivery date because of an unforeseen circumstance outside of our control, such as a strike, natural disaster, or severe winter storm. Also delivery scans might be inaccurate.
>     - An attempted delivery on or before the guaranteed delivery date meets our delivery obligation.
>     - An offer by the carrier of a delivery appointment on or before the guaranteed delivery date meets our delivery guarantee.
>
> To inquire about a refund of the shipping fees you paid on this order, contact us and select **An Order I Placed.** Choose your order, then select **Problem with an order > Shipping or delivery issues > Shipment is late.**

*Id.* at 246. Tonny satisfies the above-quoted elements, and Amazon's terms do not suggest, let alone indicate, that "guaranteed" must be stated on Tonny's checkout page.

Rather, consistent with Amazon's listed elements:

- The shipping method selected by Tonny was a "shipping option advertised on a product detail page;"

- Tonny's tea was ordered for delivery to an eligible address;

- Tonny's order was placed before any "order within" countdown listed on the checkout page, and Tonny's confirmed delivery date was included in his order confirmation email;

- Tonny's order did not contain items that were ineligible for guaranteed delivery;

- Tonny's credit card was successfully charged before any deadline displayed on his checkout page;

10

- Amazon did not miss the guaranteed delivery date and time because of an unforeseen circumstance outside of its control;

- Amazon did not make an attempted delivery before the guaranteed delivery date and time; and

- Amazon did not make an offer of a delivery appointment on or before the guaranteed delivery date and time.

Underscoring the absence of a "guaranteed" notation requirement that Amazon now attempts to conjure, Amazon's Guaranteed Delivery Terms and Conditions do not even reference Amazon's help page let alone suggest there are other requirements therein that are inexplicably omitted from stated terms and conditions.

As Amazon specifically enumerates the elements giving rise to a guaranteed delivery and the inclusion of "guaranteed" on Amazon's checkout page is conspicuously absent in Amazon's listed elements, the district court impermissibly altered the terms of the agreement when it inserted this requirement into Amazon's contract. *See U.S. Bank Nat'l Ass'n v. Lissak*, 2015 WL 4093401 * 3 (Wash. Ct. App. 2015) (quoting *McCormick v. Dunn & Black, P.S.*, 167 P.3d 610 (Wash. Ct. App. 2007)) ("a court may not add terms to the contract").

*1. Amazon Failed to Incorporate its Help Page*

The second problem with the district court's stated basis for dismissal is highlighted by Amazon. As stated by Amazon while characterizing its help page, "[i]f, during the checkout process, customers 'need help,' the checkout page clearly directs customers to review Amazon's Help & Customer Service web pages." *Id.* at 82 (emphasis added). As accurately conceded by Amazon, Tonny would only have reason

11

to view Amazon's help page <u>if</u> he were in need of help. Absent such a need he would have no reason to visit the help page—let alone to suspect that Amazon's eight listed elements necessary to give rise to a guaranteed delivery are incomplete and a ninth element is inexplicably included on the help page.

If Amazon wished to add to the elements giving rise to a guaranteed delivery by incorporating its help page, at the very least, Amazon was required to include a clause in its Guaranteed Delivery Terms and Conditions alerting Tonny that its listed elements are not exclusive and that its help page includes an additional prerequisite. As Amazon altogether failed to include such a provision, it may not now belatedly attempt to add to its contract by way of a clause that can only be found on a portion of its website that a customer would only have reason to visit if he required help.

### 2. *"Guaranteed" is not a Precondition*

An additional problem with Amazon's invocation of its help page is that the inclusion of "guaranteed" is not a precondition of performance but instead—as one would expect on such a page—an indication of what Amazon will do. To this end, Amazon's help page states, "[y]our delivery date will state 'guaranteed' and be displayed on the final page before you place the order." *See* 2 EXCP 243. Amazon's chosen language does not suggest that stating "guaranteed" on Tonny's checkout page constitutes a precondition of performance but, instead, indicates what Amazon will do after a shipping option is selected. That Amazon failed to do what its help page indicated it would do after Tonny paid the premium associated with the guaranteed shipping

12

option and satisfied the elements of Amazon's Guaranteed Delivery Terms and Conditions does not excuse Amazon's failure to return the premium paid by Tonny.

### 3. *Amazon Never Includes "Guaranteed"*

Finally, it is notable that Tonny's checkout page is a standard form used for all expedited deliveries. *See id.* at 141. As such, Amazon <u>never</u> includes "guaranteed" on a customer's checkout page. *Id.* at 138-39, 141. The fact that Amazon never includes "guaranteed" underscores Storey's contention that Amazon is attempting to materially change the agreement by conjuring an element that does not otherwise exist. In other words, the fact that Amazon never includes a guaranteed provision demonstrates that Amazon is well aware that the inclusion of such a provision is not a contractual prerequisite or, implausibly, Amazon's delivery provisions are illusory and Amazon does not offer the shipping option advertised on its website.

### B. *Refunds*

The district court also dismissed Storey's breach of contract claim predicated upon its conclusion that there is no provision in Amazon's contract that gives rise to an automatic refund. 1 EXCP 20. Amazon's Delivery Guarantees, however, provide that "[i]f we provide a guaranteed delivery date and a delivery attempt isn't made by this date, we'll refund any shipping fees associated with that order." 2 EXCP 290. As set forth above, Tonny's order satisfied the listed prerequisites of Amazon's Guaranteed Delivery Terms and Conditions and, as such, qualified as a guaranteed delivery that triggered Amazon's promised refund. *See id.* at 246.

13

### 1. *Refund is not an Element of Breach of Contract*

Of equal importance, a refund provision is not necessary to give rise to a viable breach of contract claim, and Storey can prevail by way of its claim even if Amazon said nothing of a refund. In *Hickcox-Huffman v. US Airways, Inc.*, 855 F.3d 1057, 1060-62 (9th Cir. 2017), this Court was confronted with an airline's contention that the Airline Deregulation Act preempted a plaintiff's claims because the plaintiff did not possess a viable breach of contract claim in the absence of a refund provision. While rejecting the airline's contention, this Court reasoned:

> US Airways argues that, because the airline does not expressly promise a refund if baggage is delayed, there is no breach of contract and no obligation to refund. <u>But a contract may be enforceable even if it does not specify a remedy for a breach</u>. Ordinarily common law provides a range of remedies for breach, except where some remedies are contractually limited or excluded. Refunds are among the remedies traditionally recognized as among those which may be granted "as justice requires." "<u>The final interest capable of being protected following a breach of contract, the restitution interest, seeks to compensate the plaintiff for the reasonable value of any benefit it conferred on the defendant pursuant to the parties' contract</u>." Here this remedy requires disgorging the benefit to US Airways of the $15 that it received in exchange for its promise of timely delivery.

*Hickcox-Huffman*, 855 F.3d at 1064-65 (citing Restatement (Second) of Contracts § 344) (emphasis added). As echoed by the Eastern District of Missouri while relying on this Court's above-quoted analysis and rejecting a defendant's contention that the plaintiff's breach of contract claims could not be sustained in the absence of a refund provision, "[a] contract may be enforceable even if it does not specify a remedy for breach." *Klutho v. S'west Airlines Co.*, 2020 WL 6703283 * 3 (E.D. Mo. Nov. 13, 2020). For this reason,

Storey may recover his restitution interest for the premium he paid for expedited delivery in the absence of a refund provision.

### 2. A Refund Request is not a Condition Precedent

Amazon also contends that customers "must" request a refund, and Storey may not bring suit absent a request. 2 EXCP 269. A condition precedent is an act that must occur before a duty for contractual performance arises. *MDY Indus., LLC v. Blizzard Ent., Inc.*, 629 F.3d 928, 939 (9th Cir. 2011) (citing Restatement (Second) of Contracts § 224). The failure to satisfy a condition precedent discharges a duty. *Quinn v. Cherry Lane Auto Plaza, Inc.*, 225 P.3d 266, 272 (Wash. Ct. App. 2009) (citing *Thatcher v. Salvo*, 116 P.3d 1019 (Wash. Ct. App. 2005)).

> Whether a contract provision is a condition precedent or a contractual promise depends on the intent of the parties, to be determined from a fair and reasonable construction of the language used in light of all surrounding circumstances. "Words such as 'provided that,' 'on condition,' 'when,' 'so that,' 'while,' 'as soon as,' and 'after'" suggest a conditional intent, not a promise." The terms "subject to" and "contingent upon" likewise demonstrate an intent to form a condition precedent.

*U.S. Bank Nat'l Ass'n. v. Roosild*, 487 P.3d 212, 218 (Wash. Ct. App. 2021) (citing *Tacoma Northpark, LLC v. NW, LLC*, 96 P.3d 454 (Wash. Ct. App. 2004)).

Applying this law, there is no basis to contend that a request for a refund is a condition precedent to Amazon's performance, and the "must" qualification included in Amazon's motion to dismiss is conspicuously absent from it contract. Rather, Amazon expressly informed Tonny that there are eight elements necessary to give rise to a

guaranteed delivery, and no element remotely suggests Tonny "must" request a refund.  2

EXCP 246.  Amazon, instead, merely states:

> To <u>inquire</u> about a refund of the shipping fees you paid on this order, contact us and select An Order I Placed.  Choose your order, then select Problem with an order > Shipping or delivery issues > Shipment is late.

*Id.* (emphasis added).  Amazon's act of directing customers to a link where they may

"inquire" about a refund does not come close to the language that must be present to

give rise to a condition precedent and, in the absence thereof, this Court should reject

Amazon's contention that Tonny was required to request a refund.

### C. *Delivery was Required within the Specified Window*

Although not a basis of dismissal relied upon by the district court, Amazon also

contends it only had a duty to deliver Tonny's tea on March 28, 2023 rather than within

Tonny's chosen window.  Amazon's contention, however, ignores its provision that

expressly provided Tonny with the option of having his tea delivered within its offered

window and its indication that its delivery was "late."

#### 1. *A Specified Window is not a "Preference"*

While noting that its terms and conditions reference only a general date rather

than a specific window, Amazon contends that the 4:00 a.m. to 8:00 a.m. window that

Tonny chose merely amounted to a "preference" rather than a provision of performance.

2 EXCP 267.  In support of its contention, Amazon maintains, "[a]t checkout, customers

can typically choose from several delivery options, often including overnight or same-day

delivery."  *Id.*  Amazon's characterization of its "options" is tellingly incomplete, as

16

customers are not limited to the option of overnight or same day delivery but have the option of a specified window:



*Id.* at 256. As evidenced by this screenshot, Tonny was not only afforded the specific option of a 4:00 a.m. to 8:00 a.m. window but "Delivery: Overnight 4 AM – 8 AM" <u>is the most conspicuous language on his checkout page</u>.

"It is a fundamental precept of contract law that contracts must be interpreted in accordance with <u>all</u> of their terms." *Storti v. Univ. of Wash.*, 330 P.3d 159, 164 (Wash. 2014) (citing *Wagner v. Wagner*, 621 P.2d 1279 (Wash. 1980)) (emphasis added). As

17

Amazon's checkout page is a component of its contract and the option of shipping Tonny's tea within the 4:00 a.m. to 8:00 a.m. window is not only included therein but is the most conspicuous term on the page, Tony's election of a specific window is contractually significant.

Likewise, that Amazon's terms include a general date rather than a specific window does not reduce Amazon's offered window to an illusory "preference." As stated by the Western District of Washington:

> The problem with this argument, however, is that it fails to read the contract as a cohesive whole and ignores the well-established maxim of contractual interpretation instructing that "[s]pecific terms of a contract govern inconsistent more general terms."

*AGCS Marine Ins. Co. v. Expeditors Int'l Ocean, Inc.*, 470 F.Supp.3d 1210, 1219 (W.D. Wash. 2020); *see also Adler v. Fred Lind Manor*, 103 P.3d 773, 786 (Wash. 2004) (quoting Restatement (Second) of Contracts § 203(c)) (specific terms are given greater weight than general language). Because window option of Amazon's checkout page is more specific than the general date of Amazon's terms and conditions, the specific window governs.

Finally, the district court's observation that Amazon's purported date does not correspond with its practice is particularly telling. As the district court observed:

> The Court finds unpersuasive Amazon's attempts to characterize Storey's delivery as timely because he paid for fastest shipping or overnight shipping rather than delivery during the timeslot he selected, given that Amazon's communications with Storey acknowledged that the delivery was delayed.

2 EXCP 9 n. 5. Consistent with the district court's observation, Amazon knew it agreed to deliver Tonny's tea within his chosen window and cannot plausibly contend that

18

Tonny did not pay a premium for delivery within this window in light of the fact that it acknowledged his delivery was "late."

## 2. *Extrinsic Evidence*

To the extent the specific window of Amazon's checkout page does not definitively trump the general date of Amazon's terms and conditions, the conflicting provisions give rise to ambiguity, and ambiguities are not only construed against the drafter but permit the consideration of extrinsic evidence. *See Borton & Sons, Inc. v. Burbank Prop., LLC*, 444 P.3d 1201, 1205 (Wash. Ct. App. 2019) (ambiguities are construed against the drafter); *see also Seabury & Smith, Inc. v. Payne Fin. Group, Inc.*, 393 F.Supp.2d 1057, 1062 (E.D. Wash. 2005) (ambiguity allows for the consideration of extrinsic evidence).

Extrinsic evidence buttresses Storey's contention that Tonny paid a premium to have his tea delivered between 4:00 a.m. and 8:00 a.m., as Amazon specifically advised Tonny that his tea was running "late" and issued confirmations indicating that his tea would arrive between 4:00 a.m. and 8:00 a.m. 2 EXCP 297-988. Particularly when it is realized that there is nothing in Amazon's contract that suggests Tonny's chosen window amounted to a "preference" and applying the rule that ambiguities are construed against the drafter, Amazon's indication that Tonny's tea was running "late" and would not arrive within his chosen window supports Storey's contention that his chosen window did not amount to contractual surplusage and, instead, amounted to a deliverable.

19

### 3. *Amazon's Performance Belies its Claimed Interpretation*

Finally, Amazon's performance demonstrates that it knows its obligations are triggered by a customers' election of a specific window rather than a general date, as Amazon offers windows that provide a customer with the option of separate days. For example, Amazon presents its customers with the following option:



*Id.* at 141. As can be gathered from the attached screen shot, Amazon's guaranteed delivery is necessarily predicated upon Amazon's offered windows rather than a date, as

the offered windows copied above span <u>two dates</u> and a delivery that runs into the second window would amount to a delivery on a different date.

## II. The CPA

The CPA prohibits unfair or deceptive practices in commerce. RCW § 19.86.020. A CPA claimant must establish five elements: 1) an unfair or deceptive act or practice; 2) in commerce; 3) that affects the public interest; 4) injury to the plaintiff's property; and 5) causation. *Wright v. Lyft, Inc.*, 406 P.3d 1149, 1153 (Wash. 2017) (citing *Hangman Ridge Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531 (Wash. 1986)). The CPA is intended to be liberally construed to reach any unfair or deceptive act. *Young v. Toyota Motor Sales, U.S.A.*, 472 P.3d 990, 994 (Wash. 2020). Because there is no limit to human inventiveness, courts "must be able to determine whether an act or practice is unfair or deceptive to fulfill the protective purposes of the CPA." *Klem v. Wash. Mut. Bank*, 295 P.3d 1179, 1187 (Wash. 2013).

The deceptive practice underlying a CPA claim must have "the capacity to deceive a substantial portion of the public" and be "likely to mislead a reasonable consumer." *Haywood v. Amazon.com, Inc.*, 2023 WL 4585362 * 7 (W.D. Wash. July 18, 2023). A plaintiff, however, need not show that the practice was intended to deceive, "only that it had the capacity to deceive a substantial portion of the public." *Id.* (citing *Leingang v. Pierce Cnty Med. Bureau, Inc.*, 930 P.2d 288 (Wash. 1997)). The determination of whether a communication is deceptive depends upon the "net impression" it creates, and even technically accurate information can be deceptive if the overall representation is likely to

21

mislead. *State v. Mandatory Poster Agency, Inc.*, 398 P.3d 1271, 1279 (Wash. Ct. App. 2017) (citing *Fed. Trade Comm'n v. Cyberspace.Com LLC*, 453 F.3d 1196, 1200 (9th Cir. 2006)).

### A. The District Court's Basis for Dismissal

The district court dismissed Storey's CPA claim predicated upon its conclusion that Amazon's help page alerted Tonny that his order did not qualify for a guaranteed delivery because his checkout page did not include the notation "guaranteed." 1 EXCP 8. This conclusion, however, does not address the fact that Amazon specifically informed Tonny that "[t]he following requirements must be met to qualify for a delivery guarantee refund" and then listed elements that do not suggest "guaranteed" must be included on his checkout page and failed to alert him that the listed elements must be considered in conjunction with its help page. 2 EXCP 246. Because of the foregoing, a reasonable consumer viewing Amazon's terms and conditions would believe the listed elements are sufficient and have no reason to scour a seemingly unrelated help page for additional qualifying terms.

Amazon underscores the misleading nature of its representations. Amazon states, "[i]f, during the checkout process, customers 'need help,' the checkout page clearly directs customers to review Amazon's Help & Customer Service web pages." *Id.* at 82 (emphasis added). Consistent with Amazon's use of "if," Tonny would only have reason to view Amazon's help page if he needed help. If Amazon wished to expand the elements giving rise to a guaranteed delivery by incorporating its help page, Amazon was—at the very least—required to alert Tonny that its listed elements are not exclusive

22

and that its help page includes an additional qualifier. Thus, it was reasonable for Tonny—or any other consumer—to believe Amazon when it informed him that there are eight predicates for a guaranteed delivery. Amazon's insistence now that there is a ninth requirement buried in a help page simply confirms that the predicates representation is misleading.

The determination of whether a practice is deceptive is a question of law for the court when the facts underlying the practice are undisputed. *Indoor Billboard/Wash. Inc. v. Integra Telecom of Wash., Inc.*, 170 P.3d 10, 18 (Wash. 2007) (quoting *Leingang v. Pierce Cnty Med. Bureau, Inc.*, 930 P.2d 288 (Wash. 1997)). Conversely, the determination of whether a practice would mislead a reasonable consumer appears to typically be a question of fact. *C.f. William v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008); *see also Lilly v. Conagra Foods, Inc.*, 743 F.3d 662, 665 (9th Cir. 2015). That Tonny took Amazon's representation that "[t]he following requirements must be met to qualify for a delivery guarantee" at face value and had no idea that an unmentioned purported ninth element could render Amazon's window option illusory is, at the very least, sufficiently reasonable to give rise to a question of fact.

Finally, it is notable that Amazon does not believe "guaranteed" must be included on Tonny's checkout page, as "guaranteed" is <u>never</u> included on Amazon's form checkout page. *See* 2 EXCP 138-39, 141. If Amazon regularly included its purported "guaranteed" provision on its checkout page, one might excuse its failure to include such a provision in its Guaranteed Delivery Terms and Conditions' listed elements as poor

draftsmanship. That Amazon never includes such a provision, however, demonstrates that it is attempting to conjure this requirement out of whole cloth. In either event, representations that are inconsistent with Amazon's practices are necessarily deceptive and capable of misleading a reasonable consumer.

### B. *Amazon's Inclusion of a Window is Deceptive*

Amazon's inclusion of multiple time window options is also deceptive and gives rise to a reasonable belief that a customer's premium is expended in exchange for delivery within a chosen window. As explained by the Washington Court of Appeals:

> A contractor does not provide "estimates" or representations as to completion or repair dates merely to be helpful to the purchaser, but to influence the purchaser to buy the contractor's product or to rely upon the contractor's services to remedy defects in the product. The purchaser will likely rely upon such "estimates."

*Keyes v. Bollinger*, 640 P.3d 1077, 1081 (Wash. Ct. App. 1982). Consistent with the ability of temporal representations to induce reliance, Amazon's offered windows have value and are presented to induce customers to pay a shipping premium to allow them to assure that their product arrives in time for its intended use and to protect against porch piracy. 2 EXCP 137, 155. As the CPA reaches practices that unfairly induce a consumer to buy something, Amazon's act of inducing customers to believe their order will be delivered within the window that corresponds with their premium falls within the ambit of the CPA. *See Johnston v. Beneficial Mgmt Corp. of Am.*, 538 P.2d 510, 515 (Wash. 1975) (citing *Fed. Trade Comm'n v. Colgate-Palmolive Co.*, 380 U.S. 374 (1965)) (unfair inducement falls within the ambit of the CPA).

24

Amazon nonetheless contends its presentation of the option for delivery within a specific window is not deceptive because its terms and conditions reference a general delivery date rather than a specific window. 2 EXCP 89-90. Amazon's contention, however, ignores the conflicting aspect of its contract that provides customers with the option of a specific window. Consistent with Amazon's offered window, Tonny's belief that his shipping premium applied to his chosen window was reasonable. As accurately noted by the district court:

> The Court finds unpersuasive Amazon's attempts to characterize Storey's delivery as timely because he paid for fastest shipping or overnight shipping rather than delivery during the timeslot he selected, given that Amazon's communications with Storey acknowledged that the delivery was delayed.

2 EXCP 9 n. 5. Consistent with the district court's observation, Amazon cannot plausibly contend that Tonny unreasonably believed that he paid a premium for delivery within his chosen window in light of the fact that it acknowledged his tea was "late."

## CONCLUSION

Storey asks this Court to reverse the dismissal of its amended complaints.

Respectfully submitted,

/s/ Gabriel A. Hawkins
Gabriel A. Hawkins
COHENMALAD, LLP
One Indiana Square
Suite 1400
Indianapolis, Indiana 46204
317.636.6481 (telephone)
ghawkins@cohenmalad.com

*Attorney for the Appellants*

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a) because it contains 6213 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

/s/ Gabriel A. Hawkins
Gabriel A. Hawkins
COHENMALAD, LLP
One Indiana Square
Suite 1400
Indianapolis, Indiana 46204
317.636.6481 (telephone)
ghawkins@cohenmalad.com

26

**CERTIFICATE OF SERVICE**

I hereby certify that on August 6, 2025 and pursuant to Rule 25 of the Federal Rules of Appellate Procedure, a copy of the foregoing brief of the plaintiff-appellants was filed electronically with the Clerk of Court using the Court's CM/ECF system. I further certify that I have served, via the Court's Electronic Filing System and overnight courier, a copy of the same on the following:

Charles C. Sipos
Ellie F. Chapman
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
CSipos@perkinscoie.com
EChapman@perkinscoie.com

*Counsel for Defendant-Appellee*
*Amazon.com Services LLC*

/s/ Gabriel A. Hawkins
Gabriel A. Hawkins
COHENMALAD, LLP
One Indiana Square
Suite 1400
Indianapolis, Indiana 46204
317.636.6481 (telephone)
ghawkins@cohenmalad.com