Appeal No. **25-2539**

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

THE ESTATE OF TONNY STOREY, et al.,

*Plaintiff - Appellants*,

v.

AMAZON.COM, INC., et al.,

*Defendants – Appellees*

On Appeal from the United States District Court
For the Western District of Washington, Seattle Division
No. 2:23-CV-01529-KKE
Hon. Kymberly K. Evanson

**ANSWERING BRIEF FOR
DEFENDANTS-APPELLEES AMAZON.COM, INC.,
AMAZON.COM SERVICES, LLC**

Charles C. Sipos
Lauren J. Tsuji
Perkins Coie LLP
1301 Second Avenue, Suite 4200
Seattle, Washington 98101
+1.206.359.8000
CSipos@perkinscoie.com
LTsuji@perkinscoie.com

*Attorneys for Defendants –
Appellees Amazon.com, Inc., Amazon.com Services, LLC*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1, Defendant-Appellee Amazon.com Services LLC discloses that its sole member is Amazon.com, Sales Inc., which is a wholly owned subsidiary of Defendant-Appellee Amazon.com, Inc. Amazon.com, Inc. has no parent company and no other publicly held corporation owns 10% or more of Amazon.com, Inc.'s stock.

Defendants-Appellees Amazon.com Services LLC and Amazon.com, Inc. are both incorporated in the state of Delaware and have their principal places of business in the state of Washington.

/s/ *Charles C. Sipos*

*Attorney for Defendants - Appellees*
*Amazon.com, Inc., Amazon.com*
*Services, LLC*

TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................. 1

STATEMENT OF THE ISSUES ........................................... 3

STATEMENT OF JURISDICTION ...................................... 4

STATEMENT OF THE CASE .............................................. 4

I.    FACTUAL BACKGROUND ................................................ 4

     A.    Amazon customers can choose from a variety of delivery options and seek shipping fee refunds for items delivered after the specified delivery date. ............................................................... 4

     B.    Amazon offers "Guaranteed" delivery in limited circumstances that are clearly explained to customers. .......................... 5

         1.    Storey's contract with Amazon was comprised of terms that were plainly disclosed on Amazon.com. .................. 5

         2.    Amazon's Delivery Terms place specified limits on the availability of "guaranteed" delivery. ............................................. 7

     C.    Storey was not offered "guaranteed" delivery, he received his item on the date he requested, and he never sought a refund of his delivery fees. .................. 10

II.    PROCEDURAL HISTORY ................................................ 11

     A.    The district court granted Amazon's first motion to dismiss in full. ........................... 11

         1.    The district court dismissed Storey's breach of contract claim with prejudice because it was contradicted by the language of the contract itself. ........... 112

         2.    The district court dismissed Storey's claims for breach of the duty of good faith and fair dealing and unjust enrichment with prejudice. ..................................... 14

i

TABLE OF CONTENTS (CONTINUED)

Page

3. The district court dismissed Storey's CPA claim because it was premised on conduct expressly allowed by the parties' contract. ........................................................ 15

B. The district court granted Amazon's second motion to dismiss in full. ....................... 16

SUMMARY OF THE ARGUMENT .................................... 18

STANDARD OF REVIEW .................................................. 22

ARGUMENT .................................................................... 22

I. THE DISTRICT COURT CORRECTLY DISMISSED STOREY'S BREACH OF CONTRACT CLAIM. .................. 22

A. The Delivery Terms only provide for guaranteed delivery on certain orders, and Storey concedes that his order did not qualify. ......................................................... 24

B. The Delivery Terms only provide for guaranteed delivery by a specified "date" and Storey concedes that he received his order on that date........................... 30

C. The Delivery Terms do not provide for any "automatic refund" and instead instructs consumers to contact Amazon customer service for a refund. ........................................................ 34

II. THE DISTRICT COURT CORRECTLY DISMISSED STOREY'S CPA CLAIM..................................................... 36

A. Storey did not plead any unfair or deceptive act........................................................ 37

1. It is not unfair or deceptive under the CPA for a party to abide the terms of its contract............................................. 37

2. Amazon did not engage in any unfair or deceptive act by following its contract. 39

TABLE OF CONTENTS (CONTINUED)

Page

B.    Storey did not plead causation and has also waived that issue on appeal by failing to argue it. ............................................... 43

CONCLUSION .................................................................. 47

iii

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Babrauskas v. Paramount Equity Mortg.*,
No. C13-0494-RSL, 2013 WL 5743903 (W.D.
Wash. Oct. 23, 2013) ........................................................43

*Bazuaye v. I.N.S.*,
79 F.3d 118 (9th Cir. 1996).............................................45

*Calderon–Ontiveros v. INS*,
809 F.2d 1050 (5th Cir. 1986)..........................................22

*Cedano-Viera v. Ashcroft*,
324 F.3d 1062 (9th Cir. 2003)..........................................45

*Cole v. Keystone RV Co.*,
No. C18-5182 TSZ, 2021 WL 3111452 (W.D.
Wash. July 22, 2021), *aff'd*, No. 21-35701, 2022
WL 4234958 (9th Cir. Sept. 14, 2022).............................43

*Collins v. City of San Diego*,
841 F.2d 337 (9th Cir.1988)........................................15, 22

*DeFrancesco v. Robbins*,
136 F.4th 933 (9th Cir. 2025) ..........................................22

*DeHoog v. Anheuser-Busch InBev SANV*,
899 F.3d 758 (9th Cir. 2018)............................................29

*F.T.C. v. EDebitPay, LLC*,
695 F.3d 938 (9th Cir. 2012).............................................33

*G&G Prods., LLC v. Rusic*,
902 F.3d 940 (9th Cir. 2018).......................................22, 28

*Go2Net, Inc. v. C I Host, Inc.*,
60 P.3d 1245 (Wash. Ct. App. 2003)................................32

*Gray v. Amazon.com Inc.*,
No. 23-35377, 2024 WL 2206454 (9th Cir. May
16, 2024) ..........................................................................46

iv

## TABLE OF AUTHORITIES

**Page**

*Green v. Seattle Art Museum*,
No. C07-0058MJP, 2008 WL 2180144 (W.D.
Wash. May 22, 2008), *aff'd*, 321 F. App'x 587
(9th Cir. 2009) ......................................................................25

*Hangman Ridge Training Stables, Inc. v. Safeco
Title Ins.*,
719 P.2d 531 (Wash. 1986) ..............................................37

*Haywood v. Amazon.com, Inc.*,
No. 2:22-CV-01094-JHC, 2023 WL 4585362
(W.D. Wash. July 18, 2023) .....................................passim

*Hearst Comm'cns, Inc. v. Seattle Times Co.*,
115 P.3d 262 (Wash. 2005) ...................................31, 32, 34

*In re Amazon Serv. Fee Litig.*,
No. C22-0743TL, 2024 WL 3460939 (W.D.
Wash. July 18, 2024), *aff'd*, 2025 WL 2268252 ................38

*In re: Amazon Service Fee Litigation*,
No. 24-5176, 2025 WL 2268252 (9th Cir. Aug. 8,
2024) ..........................................................19, 23, 39, 41

*In re Mortg. Elec. Registration Sys., Inc.*,
754 F.3d 772 (9th Cir. 2014)............................................29

*Johnson v. Fed. Home Loan Mortg. Corp.*,
793 F.3d 1005 (9th Cir. 2015)....................................23, 25

*Koller v. Flerchinger*,
441 P.2d 126 (Wash. 1968) ..............................................35

*Lowden v. T-Mobile USA, Inc.*,
No. C05-1482MJP, 2009 WL 537787 (W.D.
Wash. Feb. 18, 2009), *aff'd*, 378 F. App'x 693
(9th Cir. 2010) ............................................................38, 39

*Marquez v. Amazon.com, Inc.*,
69 F.4th 1262 (11th Cir. 2023) ..............................23, 39, 41

# TABLE OF AUTHORITIES

**Page**

*MDY Indus., LLC v. Blizzard Ent., Inc.*,
629 F.3d 928 (9th Cir. 2010), *opinion amended
and superseded on other grounds on denial of
reh'g*, No. 09-15932, 2011 WL 538748 (9th Cir.
Feb. 17, 2011) ....................................................35

*Myers v. State*,
218 P.3d 241 (Wash. Ct. App. 2009)..................30

*Nihon Ki-In Go Inst. of the W. v. Nihon Ki-In*,
No. C12-0804RSL, 2012 WL 12941689 (W.D.
Wash. June 27, 2012).........................................34

*P.E.L. v. Premera Blue Cross*,
540 P.3d 105 (Wash. 2023) ...............................22

*Quinn v. Cherry Lane Auto Plaza, Inc.*,
225 P.3d 266 (Wash. Ct. App. 2009)..................35

*Seattle Pro. Eng'g Emps. Ass'n v. Boeing Co.*,
991 P.2d 1126 (Wash. 2000) .............................35

*Skagit State Bank v. Rasmussen*,
745 P.2d 37 (Wash. 1987) .................................28

*Smale v. Cellco P'ship*,
547 F. Supp. 2d 1181 (W.D. Wash. 2008) .............38, 39, 42

*Snohomish Cnty. Pub. Transp. Benefit Area Corp.
v. FirstGroup Am., Inc.*,
271 P.3d 850 (Wash. 2012) ...............................27

*Spokane Sch. Dist. No. 81 v. Spokane Educ. Ass'n*,
331 P.3d 60 (Wash. Ct. App. 2014)....................35

*Storti v. Univ. of Wash.*,
330 P.3d 159 (Wash. 2014) ...............................27

vi

# TABLE OF AUTHORITIES

**Page**

*Talyancich v. Microsoft Corp.*,
No. C12-1128-JCC, 2012 WL 12941690 (W.D.
Wash. Nov. 2, 2012) ........................................................30

*Taylor v. Amazon.com, Inc.*,
No. 2:24-CV-00169-MJP, 2024 WL 3326430
(W.D. Wash. July 8, 2024) ..............................................45

*Thompson v. Comm'r*,
631 F.2d 642 (9th Cir. 1980)............................................45

*Tjart v. Smith Barney, Inc.*,
28 P.3d 823 (Wash. Ct. App. 2001)..................................28

*United Nat'l Ins. Co. v. Spectrum Worldwide, Inc.*,
555 F.3d 772 (9th Cir. 2009)............................................27

*United States v. Kama*,
394 F.3d 1236 (9th Cir. 2005)...........................................45

*Universal Life Church Monastery Storehouse v. King*,
No. 2:19-CV-00301-RSL, 2019 WL 2524993 (W.D.
Wash. June 19, 2019)......................................................46

*Wright v. Lyft, Inc.*,
406 P.3d 1149 (Wash. 2017) ...........................................37

*Young v. Toyota Motor Sales, U.S.A.*,
472 P.3d 990 (Wash. 2020) ......................................37, 43

## INTRODUCTION

The disposition of this appeal is largely controlled by one of the most basic principles of law: A party cannot rewrite his contract to insert language that is not there or ignore language he disfavors.

Plaintiff-Appellant Tonny Storey ("Storey") alleged that Defendant-Appellee Amazon.com Services LLC ("Amazon") breached its contract with him when, for a $2.99 fee, Amazon delivered his order for herbal tea overnight and on the date he requested at the time of purchase, although a few hours later than the time window he selected. This conduct was what the contract between Storey and Amazon provided, and Amazon followed that contract to the letter. Storey nonetheless alleged that Amazon "guaranteed" he would receive his order earlier in the day, and that when this did not happen, he was entitled to an automatic refund of the delivery fee. This theory of breach, as the district court correctly held, was openly contradicted by the terms of the parties' contract.

*First*, a delivery "guarantee" did not apply to Storey's order at all. The contract says in multiple places that the word "guarantee" must appear on the customer's checkout page to qualify, and it was undisputed that this language was not present for Storey's order. *Second*, the

1

contract specified in nineteen separate places that any delivery guarantee only extended to the requested "date," not a particular hours-based delivery window on that date. Again, it was undisputed that Storey received his order on the date he selected at checkout. *Third*, for orders where the "guarantee" applies, the contract states that if the delivery date is missed then customers should contact Amazon to request a refund. There is *no* language remotely suggesting that refunds issue automatically and with no action by the customer, nor any legal authority imposing that requirement. Storey affirmatively alleged that he never sought a refund, and so his claim for breach of contract fails for this reason as well.

Storey attempted to refashion his meritless breach of contract claim as one for the violation of Washington's Consumer Protection Act, RCW 19.86 *et seq.* ("CPA"). This claim was also correctly dismissed for similar reasons. Most fundamentally, the claim was barred under a settled body of law that consistently holds it is not unfair or deceptive for a defendant to abide the terms of its contract. Yet, that is precisely what Storey insisted was unfair or deceptive here. Similarly, Storey did not satisfy the causation element of his CPA claim, because the purported harm he

suffered was based on his own inaction in failing to seek a refund, not by any conduct on Amazon's part.

On appeal, Storey has no meaningful response to these numerous fatal defects. So, he attempts to rewrite the contract anew, with his lawyers now repudiating terms that Storey's own pleadings admitted formed the basis of his claims. These tactics are barred by this Court's rules on appeal and are plainly contradicted by the pleadings below. They serve as no basis to reverse the district court's thoroughly reasoned and correct dismissal of Storey's claims.

This Court should affirm the district court's dismissal of Storey's claims and its accompanying judgment in Amazon's favor.

## STATEMENT OF THE ISSUES

1. Whether the district court correctly dismissed Storey's breach of contract claim because the claim was premised on an interpretation contradicted by the unambiguous language of the contract itself.

2. Whether the district court correctly dismissed Storey's CPA claim because (1) it was not unfair or deceptive for Amazon to follow the terms of its contract and (2) any harm suffered by Storey was not caused by Amazon, because Storey never requested a refund under that contract.

3

## STATEMENT OF JURISDICTION

The Court has jurisdiction under 28 U.S.C. § 1332(d) and 28 U.S.C. § 1291. On June 7, 2024, the district court dismissed Storey's claims for breach of contract and breach of the duty of good faith and fair dealing with prejudice. 1-ER-13–24. Then, on March 21, 2025, the district court dismissed Storey's CPA claim with prejudice and entered final judgment. 1-ER-2–12. Storey filed a Notice of Appeal on April 18, 2025. 3-ER-448–49.

## STATEMENT OF THE CASE

### I. Factual Background

#### A. Amazon customers can choose from a variety of delivery options and seek shipping fee refunds for items delivered after the specified delivery date.

This case arises from Amazon's delivery of goods sold on the Amazon.com online store. 2-ER-285 (Storey's First Amended Complaint ("FAC") ¶ 1.8).

At checkout, customers can typically select from multiple delivery options, which may include same day or overnight delivery. 2-ER-293 (FAC ¶ 4.11). For some orders, selecting the fastest delivery option requires payment of an additional fee disclosed during checkout. *Id.* So, a customer might decide to pay an additional $2.99 for overnight delivery

4

when that option is presented. 2-ER-295 (FAC ¶ 4.15). Customers who select the overnight delivery option may be given the option to select delivery within a certain hours-based window, *e.g.*, delivery between 4:00 a.m. and 8:00 a.m. or later in the day between 7:00 a.m. and 11:00 a.m. *Id.*

Customers can also seek refunds for a variety of reasons, including on shipping fees if an order is not delivered on time, *i.e.*, by their selected delivery date. 2-ER-246. Amazon's Help & Customer Service web pages provide customers with direct links to contact customer service to obtain such refunds. *Id.*; *see also* Op. Br. at 4–5.

### B. Amazon offers "Guaranteed" delivery in limited circumstances that are clearly explained to customers.

Amazon offers "guaranteed" delivery on certain orders subject to terms plainly disclosed on Amazon.com. 2-ER-234–59. These terms explain when a delivery "guarantee" applies, the scope of that "guarantee," and the process for obtaining a refund if there is an issue related to delivery. *Id.*; *see also* 1-ER-15.

### 1. Storey's contract with Amazon was comprised of terms that were plainly disclosed on Amazon.com.

Through multiple iterations of his complaint, Storey consistently alleged that his contract with Amazon regarding "guaranteed" delivery

was comprised of three sources, all of which were available and presented

to him in language that the district court described as "conspicuous" and

"written in plain English." 1-ER-24.

*First*, Storey identified Amazon's Help & Customer Service pages

themselves, which is where the "guaranteed' delivery provisions are spec-

ified and explained. 2-ER-286 (FAC ¶ 1.2).[1] *Second*, Storey identified the

checkout page where he completed his transaction and alleged that this

formed part of the contract as well. 2-ER-286 (FAC ¶ 4.3). This checkout

page explicitly directs customers to the Help & Customer Service pages

*Id. Third*, Storey identified Amazon's Conditions of Use. 2-ER-289 (FAC

¶ 4.1); *see also* 2-ER-291 (FAC ¶ 4.4) ("The Conditions of Use, Delivery

---

[1] Three Help & Customer Service pages comprise part of Storey's alleged contract with Amazon. The first two are the "Guaranteed Delivery Terms and Conditions" and the "Delivery Guarantees" pages. *See* 2-ER-234-35, Exs. 1 and 5. These pages were expressly invoked by Storey as part of his contract claim, and properly judicially noticed by the district court. 2-ER-291 (FAC ¶ 4.4); 1-ER-15 (First Dismissal Order at 3 n.3). A separate page titled "Place an Order with Guaranteed Delivery," was also judicially noticed as part of the relevant contract. *Id.*; *see also* SER-5 (Dkt. No. 28 (Plaintiff's Response to Amazon's Request for Judicial Notice)) (Plaintiff "does not oppose" judicial noticing of the "Place an Order with Guaranteed Delivery" page). Storey's counsel, in fact, later affirmatively argued to the district court that this third page was relevant. *See* 3-ER-372 ("So there are three documents the parties agree that the court should consider on guaranteed deliveries," including "Place an Order with Guaranteed Delivery" page).

Guarantees, and Guaranteed Delivery Terms and Conditions provided the terms of a contract or contracts under which the Plaintiff and Proposed Class members paid Amazon for a Guaranteed Delivery[.]").

For ease of reference, these three sources are referred to collectively as the "Delivery Terms." The Delivery Terms, which are a fully integrated agreement, sets forth basic requirements that limit the availability of "guaranteed" delivery.

### 2. Amazon's Delivery Terms place specified limits on the availability of "guaranteed" delivery.

"Guaranteed" delivery does not apply to all orders placed on Amazon.com, so the Delivery Terms lay out the circumstances under which the guarantee applies.

*First*, only orders that affirmatively state "guaranteed" on the final checkout page before the customer places an order qualify for "guaranteed delivery." 2-ER-234–41 (Amazon's Request for Judicial Notice ("RJN"), Ex. 1). The page entitled "Place an Order with Guaranteed Delivery" informs customers: "To place an order with guaranteed delivery . . . [o]n the checkout page, select the guaranteed shipping option. *Your delivery date will state 'guaranteed' and be displayed on the final page before you place the order*." 2-ER-241 (RJN Ex. 1) (emphasis added). That

7

requirement is repeated in the page titled "Guaranteed Delivery." 2-ER-258 (RJN Ex. 5). ("When guaranteed delivery is available on an order, we'll state this on the checkout page . . . ."). So, unless the word "guaranteed" appears on a customer's final order page, no guarantee applies. Storey affirmatively alleged that the pages containing this requirement formed part of the Delivery Terms. 2-ER-291 (FAC ¶ 4.4).

*Second*, any delivery "guarantee" only extends to the specific *date* of delivery offered, not to any hours-based time window. 2-ER-289–90 (FAC ¶ 4.2). The Delivery Terms advise customers *nineteen separate times* that only the "date" of delivery is guaranteed. *See, e.g.*, 2-ER-258 (RJN Ex. 5) ("If we provide a guaranteed delivery *date* and a delivery attempt isn't made by this *date*, we'll refund any shipping fees associated with that order. . . . The 'order within' countdown timer provides the window of time in which you must place the order to receive your delivery by the *date* shown. . . . Your confirmed delivery date is in your order confirmation email." (emphases added)).

*Third*, if a customer believes they are entitled to a refund for shipping charges because their item was not received on the date specified, they are instructed to "contact" Amazon to inquire "about a refund of the

8

shipping fees . . . paid on [the] order." 2-ER-246 (RJN Ex. 2). No provisions in the Delivery Terms state or imply that Amazon will *automatically* refund shipping charges without any action or inquiry by the customer. And Amazon also separately advises consumers that "Late Deliveries" are possible and that packages might sometimes be "delayed." 2-ER-148–49 (Storey's Second Amended Complaint ("SAC") ¶¶ 4.27, 4.28). Again, Amazon encourages consumers to contact Amazon if that occurs. 2-ER-151–52 (SAC ¶ 4.30) ("If you cannot locate your package with this guidance, we recommend . . . [c]ontact[ing] Customer Service[.]").

*Finally*, the Conditions of Use explain that Amazon's services (including delivery) are provided on an "as is" and "as available" basis, and there are no guarantees to these services unless "otherwise specified in writing." 2-ER-249–53 (RJN Ex. 3). The Conditions of Use go on to repeat that Amazon "makes no representations or warranties of any kind, express or implied . . . included in or otherwise made available to you through the Amazon services, unless otherwise specified in writing." *Id.* Thus, the extent of any "guaranteed" delivery is limited to what is "specified in writing." *Id.*

**C.**   **Storey was not offered "guaranteed" delivery, he received his item on the date he requested, and he never sought a refund of his delivery fees.**

Storey alleged that in March 2023, he ordered a variety pack of herbal tea for $19.99 and paid $2.99 to select overnight delivery. 2-ER-293 (FAC ¶ 4.9-4.10). He did not allege that the word "guaranteed" appeared at any point during the checkout process. After selecting overnight shipping, he was given the option between two hours-based delivery windows on that date, either 4 a.m. to 8 a.m. or 7 a.m. to 11 a.m. 2-ER-293 (FAC ¶ 4.10-4.11). There was no price difference between these two windows. *Id.* Instead, $2.99 represented the cost of delivering the item he purchased overnight, regardless of the window chosen. *Id.* Storey chose the 4 a.m. to 8 a.m. window. *Id.*

Storey admitted that he received his order "overnight," although a few hours later than the delivery window he selected. 2-ER-299 (FAC ¶ 4.20). He nonetheless alleged that Amazon "guaranteed" him delivery by 8 a.m. and thus should have automatically refunded his $2.99 shipping fee. 2-ER-301–02 (FAC ¶ 4.22). But Storey did not identify any language on the checkout page stating that he would automatically receive a refund if he received his item overnight but outside his selected delivery

10

window. 2-ER-294–95 (FAC ¶ 4.14). Storey vaguely alleged that the process to obtain a refund was "too onerous," although it was undisputed that he never asked for one. 2-ER-148–49 (SAC ¶¶ 4.26–4.31).

Storey alleged no facts suggesting that Amazon consistently misses delivery dates or times. Indeed, the *only* allegedly delayed delivery he identified was his own purchase. 2-ER-145 (SAC ¶ 4.21). Storey likewise did not allege any facts to show that Amazon refuses properly requested refunds or that consumers have difficulty obtaining them. *See* 2-ER-138–39 (SAC ¶¶ 4.6–4.11).

## II. Procedural History

### A. The district court granted Amazon's first motion to dismiss in full.

On September 15, 2023, Storey filed his original complaint in the Superior Court of Washington for King County. 1 -ER-14. Amazon timely removed to the Western District of Washington. *Id.* On December 5, 2023, Amazon filed its initial Rule 12(b)(6) motion to dismiss. *Id.* Rather than respond, Storey filed his First Amended Complaint ("FAC"). *Id.*

The FAC asserted claims for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and violation of the CPA. *Id.* Amazon moved to dismiss the FAC and following

11

oral argument, the district court granted Amazon's motion in full. 1-ER-13–26 (hereinafter "First Dismissal Order"). The district court dismissed the bulk of the FAC with prejudice, although dismissed the CPA claim without prejudice. 1-ER-26.

> **1.** **The district court dismissed Storey's breach of contract claim with prejudice because it was contradicted by the language of the contract itself.**

As to the breach of contract claim, the district court first determined that, based on Storey's own allegations, the Delivery Terms were comprised of: (1) Amazon's Help & Customer Service pages; (2) Amazon's Conditions of Use; and (3) Storey's checkout page. 1-ER-15. The district court held that Storey failed to allege a viable breach of this contract based either on his allegation that delivery did not occur within his specified timeslot, or that Amazon did not automatically refund his $2.99 shipping fee. 1-ER-16.

*First*, as to the alleged breach arising out of delayed delivery, the district court explained that it was undisputed that Storey's checkout page never stated that his delivery date was "guaranteed." 1-ER-19. Because the parties' contract for "guaranteed" delivery only applies when that word appears on a customer's checkout page, the district court held

12

that Storey failed to allege breach under this theory. *Id.* It rejected Storey's argument that his delivery time was "guaranteed" as contrary to the parties' Delivery Terms and an improper attempt to rewrite their language. *Id.*

*Second*, as to the alleged breach arising out of the lack of an automatic refund, the district court held that no provision in the Delivery Terms required Amazon to *automatically* refund delivery charges. 1-ER-19–21. The district court noted that the Delivery Terms direct consumers to contact Amazon if they believe a refund is owed. 1-ER-20. And it reemphasized that to impose an automatic refund requirement would be tantamount to inserting a contract term that did not exist. *Id.* ("Because Storey cannot identify a provision of the contract imposing a duty that was breached when Amazon failed to provide an automatic refund, he has failed to state a claim for breach of contract on this theory.").

Because Storey's contract claim failed under the undisputed language of the Delivery Terms, the district court dismissed this claim with prejudice. *Id.* ("Storey's breach of contract claim is not supported by the undisputed provisions of the contract, [so] he cannot cure the deficiencies with respect to the claim for breach of contract via amendment.").

13

**2. The district court dismissed Storey's claims for breach of the duty of good faith and fair dealing and unjust enrichment with prejudice.**

The district court dismissed Storey's claim for breach of the duty of good faith and fair dealing because it sought to impose extra-contractual duties never agreed to. The Delivery Terms did not "guarantee" Storey's specific delivery time nor entitle him to an automatic refund. 1-ER-21. So, Amazon necessarily did not fail to act in good faith for a contractual duty that it never assumed. *Id.* ("Because Storey has failed to show that the contract here imposes the duties on Amazon that he alleges, he cannot show that Amazon breached the duty of good faith and fair dealing with respect to those duties."). The district court dismissed this claim with prejudice.

The district court dismissed Storey's unjust enrichment claim with prejudice for similar reasons, as there was a valid and binding contract between the parties that was not breached. 1-ER-22. Here, the district court relied on controlling Washington law that dictates no claim for unjust enrichment is permitted when the issues raised are governed by an express contract. *Id.*

Storey's Opening Brief does not challenge these rulings or even

14

mention these claims. Amazon thus does not address them further, as Storey has waived any argument as to their dismissal. *Collins v. City of San Diego*, 841 F.2d 337, 339 (9th Cir.1988) (issues not raised in opening brief are deemed waived).

### 3. The district court dismissed Storey's CPA claim because it was premised on conduct expressly allowed by the parties' contract.

Storey next repurposed his claim for breach of contract as a claim for violation of the CPA. He alleged that it was unfair or deceptive for Amazon not to "guarantee" his delivery or automatically refund his shipping charge because his order was delivered overnight but outside his requested time window. 2-ER-310–11 (FAC ¶¶ 6.19–6.25).

The district court held that there was nothing deceptive in the Delivery Terms, nor did Amazon fail to keep any promises it made there. 1-ER-23–25. The "guaranteed" aspect of the Delivery Terms did not "apply to" Storey's order at all because his order did not qualify for any guarantee in the first place. *Id.* The district court also rejected Storey's theory that the Help & Customer Service pages linked to on the checkout page should be disregarded because they were "hidden" or "presented in a confusing manner," holding that "[t]he parts of Amazon's website that are at

15

issue in this case are clear, conspicuous, and do not require legal training to understand[.]" 1-ER-24 (First Dismissal Order at 12 n.6); *see also id.* (characterizing these pages as "conspicuous and described clearly").

The district court also observed that Storey's assertion that the full language of the Delivery Terms should be disregarded for purposes of his CPA claim wrongly "assume[d] that reasonable consumers do not read all of the terms and conditions of their contracts or should not be expected to do so." *Id.* The district court dismissed the CPA claim without prejudice and allowed amendment. 1-ER-26.

### B. The district court granted Amazon's second motion to dismiss in full.

Storey filed his Second Amended Complaint ("SAC"), the third pleading in the action, on July 8, 2024. 2-ER-134–61. The SAC alleged a single claim for violation of the CPA. *Id.* The SAC contained no new material facts regarding Storey's transaction or the terms that governed it. *Id.* Thus, Storey conceded that Amazon never promised him "guaranteed" delivery, nor did Amazon agree to automatically refund his shipping charges if his order was delayed. 2-ER-137–45 (SAC ¶¶ 4.4–4.21).

The district court reasoned that Storey's CPA claim was once again tethered to conduct that the parties' Delivery Terms allowed and

16

dismissed the claim with prejudice. 1-ER-12 ("Second Dismissal Order"). It rejected Storey's theory that the CPA required Amazon to automatically issue refunds when the Delivery Terms contained no such language, and explained that requiring a customer to ask for a refund is not an "unfair" practice as a matter of law. 2-ER-7.

The district court further held that Amazon *does* tell customers that the delivery guarantee only applies when the word "guaranteed" appears on the customer's checkout page, and that this simply did not occur as to Storey's order. 2-ER-9. Thus, Amazon engaged in no deceptive act when it conformed to its Delivery Terms with Storey. 2-ER-8 ("Amazon's failure to abide by promises it did not make with respect to 'Guaranteed Delivery' is not deceptive[.]").

The district court also rejected Storey's argument that the checkout page itself is deceptive, or that it otherwise improperly induced Storey to pay $2.99 for shipping. 2-ER-9. Here, the district court pointed to Amazon's process allowing customers to seek refunds for delivery charges. *Id.* ("The Help pages acknowledge that orders can arrive late or never arrive at all and provide a process by which consumers can provide feedback to Amazon on the quality of the delivery, or contact a human or a 'messaging

17

assistant' to resolve an order-related complaint.").

Finally, the district court reasoned that even if Storey had pled an unfair or deceptive act, his CPA claim would still fail due to lack of causation. 2-ER-11. That is because the alleged "harm" he suffered was entirely self-inflicted. *Id.* Storey's pleadings consistently admitted that he never asked for a refund of his $2.99 delivery fee. *Id.* So, any purported harm resulting from the lack of refund was caused not by Amazon, but by Storey.

Having dismissed Storey's sole remaining claim, the district court entered judgment in Amazon's favor. 1-ER-2.

## SUMMARY OF THE ARGUMENT

The district court correctly dismissed Storey's breach of contract and CPA claims. This Court should affirm those well-reasoned rulings, which were supported by settled law.

1. The district court's dismissal of Storey's breach of contract claim was correct and should be affirmed. That claim failed for the most fundamental of reasons: It was premised on allegations that the parties' Delivery Terms openly contradicted.

*First*, the Delivery Terms specified in at least two places that no

18

"guarantee" applies to a customer's delivery unless that word appears on the customer's checkout page. It was undisputed that this language did *not* appear as to Storey's order. So, no breach of a delivery "guarantee" could have possibly occurred because that guarantee was inapplicable to Storey's transaction.

Storey's counsel now argues for the first time on appeal that this "guarantee" limitation was not part of the Delivery Terms. But Storey told the district court the exact opposite. He repeatedly admitted that the Help & Customer Service pages where this limitation appeared were properly considered as part of his Delivery Terms and contained language to which Storey alleged he agreed. His lawyers' efforts to evade the consequences of those admissions should be rejected.

**Second**, the Delivery Terms only provide for "guaranteed" delivery on a specified "date," not during a particular hours-based window. This "date" limitation appears *nineteen separate times* in the Delivery Terms. Storey's tea was delivered overnight and on the "date" requested at checkout. As this Court recently recognized in its decision in *In re: Amazon Service Fee Litigation*, No. 24-5176, 2025 WL 2268252 (9th Cir. Aug. 8, 2024), there can be no claim for breach when Amazon engages in

19

conduct that is allowed by its contracts with customers. Here, the Delivery Terms provided for delivery on a specified "date," and Storey's order was delivered on that date.

*Third*, Storey's breach of contract claim was premised on an assertion that the Delivery Terms obligated Amazon to *automatically* refund the $2.99 delivery fee with no action on his part. Here, Storey seeks to rewrite the Delivery Terms to insert an "automatic refund" provision that does not exist, as Amazon never promised Storey an automatic refund. To the contrary, the Delivery Terms instructed Storey that if there were an issue with his delivery and he wanted a refund, he should contact Amazon to request one.

2.      The district court's dismissal of Storey's CPA claim was also correct and should be affirmed.

*First*, Storey failed to plead any unfair or deceptive act by Amazon, as it simply followed the plain language of the Delivery Terms. A well-established body of law correctly holds that a plaintiff cannot claim she was deceived by conduct disclosed in, and contemplated by, the parties' contract. The logic of these cases is sound and applies in full here. Storey tried to exploit the CPA to redline his contract with Amazon, but the law

20

does not permit him to do so.

Both purportedly deceptive practices Storey presses on appeal comprise conduct that the Delivery Terms disclosed and allowed. Storey asserts that Amazon did not disclose to him that "guaranteed" delivery is limited to orders where the word "guaranteed" appears on the customer's checkout page. This is a wholly specious argument. Storey himself pled into the case the language of the Delivery Terms containing this limitation. Storey also claims it was deceptive to present multiple time windows at checkout that "induced" him to pay for overnight delivery. Yet, here again, Amazon did exactly what it offered to do by delivering Storey's order overnight on the "date" he selected.

*Second*, Storey's CPA claim independently failed because he did not plausibly allege causation as required. The harm Storey claims he suffered, the loss of his $2.99 delivery charge, was not caused by Amazon. That harm was instead a product of his own inaction because Storey never sought a refund, even though Amazon expressly advised that customers with delivery issues can contact customer service to do just that. The district court concluded that this was a separate and independent basis to dismiss his CPA claim. Storey has failed to challenge this aspect

21

of the district court's decision on appeal, and this Court can therefore summarily affirm based on waiver alone. But in all events, the district court's causation analysis was correct.

## STANDARD OF REVIEW

This Court reviews dismissal under Rule 12(b)(6) *de novo. DeFrancesco v. Robbins*, 136 F.4th 933, 938 (9th Cir. 2025) (per curiam). This scope of this review, however, is curtailed by certain limits. Issues that an appellant fails to raise in his opening brief are deemed waived. *Collins*, 841 F.2d at 339 ("It is well established in this Circuit that claims which are not addressed in the appellant's brief are deemed abandoned."); *accord Calderon–Ontiveros v. INS*, 809 F.2d 1050, 1052 (5th Cir. 1986). Similarly, this Court generally will not consider arguments raised for the first time on appeal but not presented in the district court. *G&G Prods., LLC v. Rusic*, 902 F.3d 940, 950 (9th Cir. 2018).

## ARGUMENT

## I. THE DISTRICT COURT CORRECTLY DISMISSED STOREY'S BREACH OF CONTRACT CLAIM.

"A breach of contract is actionable only if the contract imposes a duty, the duty is breached, and the breach proximately causes damage to the claimant." *P.E.L. v. Premera Blue Cross*, 540 P.3d 105, 115 (Wash.

2023) (citation modified). If the contract in question expressly allows the challenged conduct, there is no breach. *In re Amazon Serv. Fee Litig.*,, 2025 WL 2268252, at \*1; *see also Marquez v. Amazon.com, Inc.*, 69 F.4th 1262, 1270 (11th Cir. 2023) ("[O]f course, if an action is permitted by the contract, the performance of that action is not a breach.").

Similarly, a plaintiff's failure to identify a specific contractual provision that was allegedly breached is fatal to their claim. *See, e.g.*, *Haywood v. Amazon.com, Inc.*, No. 2:22-CV-01094-JHC, 2023 WL 4585362, at \*4 (W.D. Wash. July 18, 2023) (dismissing breach of contract claim where plaintiff "identifie[d] no provision . . . that imposes a contractual duty that Amazon purportedly breached"); *Johnson v. Fed. Home Loan Mortg. Corp.*, 793 F.3d 1005, 1007–09 (9th Cir. 2015) (dismissing breach of contract claim where defendant "never agreed to assume" the obligations that were allegedly breached).

Here, Storey seeks to hold Amazon liable for breach of contract based on a duty it never assumed. The Delivery Terms state in multiple places that (1) for any "guarantee" to apply, that word must appear on the customer's checkout page; (2) that guarantee is for delivery on a specified "date" and not by a specified "time"; and (3) if the conditions for

23

guaranteed delivery are met and a customer's order is not delivered on the guaranteed date, the customer may request a refund of their delivery fee by contacting customer service.

Storey does not dispute that his order was delivered on the date shown on his checkout page, or that the word "guarantee" never appeared there. Nor does he dispute that he never contacted customer service to request a refund. So, unable to identify any contractual provision that was breached, Storey seeks to rewrite the contract altogether— by ignoring terms that appear and inserting terms that do not, and by taking positions that are contradicted by his own pleadings and the record below.

### A. The Delivery Terms only provide for guaranteed delivery on certain orders, and Storey concedes that his order did not qualify.

Storey's contract claim initially fails because his order was never subject to any delivery guarantee in the first instance. The Delivery Terms state in two separate places that guaranteed delivery does not apply to an order *unless* that offer is explicitly stated at checkout.

The "Delivery Guarantees" page provides:

> We offer guaranteed delivery on certain delivery speeds and select products. ***When guaranteed delivery is available on***

24

> ***an order, we'll state this on the checkout page***, with the associated delivery date and costs.

2-ER-258 (emphasis added).

The "Place an Order with Guaranteed Delivery" page similarly provides:

> On the checkout page, select the guaranteed shipping option. ***Your delivery date will state "guaranteed" and be displayed on the final page before you place the order***.

2-ER-243 (emphasis added).

Finally, the Conditions of Use clearly state that Amazon makes "***no express or implied guarantees***" unless "specified in writing." 2-ER-251 (emphasis added).

Here, Storey concedes that his checkout page lacked any express statement that his delivery date was "guaranteed." Op. Br. at 2–3; 3-ER-293–94. This concession is fatal to his contract claim. *See, e.g.*, *Johnson*, 793 F.3d at 1007 (affirming dismissal of breach of contract claim where defendant "never expressly assumed any such obligations"); *Green v. Seattle Art Museum*, No. C07-0058MJP, 2008 WL 2180144, at \*7 (W.D. Wash. May 22, 2008) (dismissing breach of contract claim where plaintiff "fail[ed] to point to any promise" that was breached), *aff'd*, 321 F. App'x 587 (9th Cir. 2009).

Recognizing that these terms defeat his contract claim, Storey now seeks to evade them altogether. For the first time on appeal, he suggests that the "guaranteed" limitation was not part of the Delivery Terms and should be ignored. Op. Br. at 10. Storey's latest arguments are contrary both to his repeated admissions in the proceedings below and to well-settled law and can be rejected for both of these reasons.

Storey confirmed in his own pleadings and in multiple representations to the district court that both the "Delivery Guarantees" and "Place an Order with Guaranteed Delivery" pages formed part of the Delivery Terms. As to the "Delivery Guarantees," Storey repeatedly cited and relied upon that page in his FAC. *See, e.g.*, 2-ER-291 ("Delivery Guarantees" provide "the terms of a contract or contracts under which the Plaintiff . . . paid Amazon for a Guaranteed Delivery . . ."); *see also* 2-ER-289–90 ("[O]n a web page with this very title, Amazon informs customers that it offers 'Delivery Guarantees' on certain delivery speeds and select products' on its checkout page."). As to the "Place an Order with Guaranteed Delivery" page, Storey did not oppose judicially noticing this document, and in fact affirmatively argued that it should be considered in evaluating whether his delivery satisfied the "guaranteed" limitation. *See* SER-

26

5 (Dkt. 28, Plaintiff's Response to Amazon's RJN); 3-ER-372. On appeal, Storey also acknowledges both the "Delivery Guarantees" and "Place an Order with Guaranteed Delivery" pages as "terms governing [his] purchase." Op. Br. at 4. Storey cannot reverse course on these repeated concessions, and his arguments regarding the lack of any "guarantee" fail for this reason alone. *United Nat'l Ins. Co. v. Spectrum Worldwide, Inc.*, 555 F.3d 772, 780 (9th Cir. 2009) (holding party judicially estopped from taking a position on appeal that was inconsistent with its position in district court).

Storey's preferred approach fails for other reasons, too. *First*, Storey's attempt to disregard the "guarantee" requirement is foreclosed by well-established law holding that "contracts must be interpreted in accordance with *all* of their terms." *Storti v. Univ. of Wash.*, 330 P.3d 159, 164 (Wash. 2014) (emphasis added); *see also Snohomish Cnty. Pub. Transp. Benefit Area Corp. v. FirstGroup Am., Inc.*, 271 P.3d 850, 856 (Wash. 2012) ("An interpretation of a contract that gives effect to all provisions is favored over an interpretation that renders a provision ineffective, and a court should not disregard language that the parties have used.").

27

*Second*, Storey's suggestion that a customer would not have reason to review the "Delivery Guarantees" and "Place an Order with Guaranteed Delivery" pages unless he required help (Op. Br. at 10–11) fares no better, as the validity of a contract does not depend on whether a consumer *in fact* read and reviewed all of its terms, so long as he was given an opportunity to do so. *See, e.g.*, *Tjart v. Smith Barney, Inc.*, 28 P.3d 823, 829 (Wash. Ct. App. 2001) ("[I]gnorance of the contents of a contract expressed in a written instrument does not ordinarily affect the liability of one who signs it or who accepts it otherwise than by signing it."); *Skagit State Bank v. Rasmussen*, 745 P.2d 37, 39 (Wash. 1987) ("We have always held that a party whose rights rest upon a written instrument which is plain and unambiguous, and who has read or had the opportunity to read the instrument, cannot claim . . . to be ignorant of what is provided therein."). Indeed, Storey does not claim to have actually read *any* of the terms he relies on, but this is not a basis for excising that language from the Delivery Terms.

*Third*, Storey's suggestion that Amazon *never* includes the word "guaranteed" on a customer's checkout page was not pled and was raised for the first time on appeal. *See G&G Prods., LLC*, 902 F.3d at 950

(arguments raised for the first time on appeal not considered); *accord In re Mortg. Elec. Registration Sys., Inc.*, 754 F.3d 772, 780 (9th Cir. 2014) ("Generally, arguments not raised in the district court will not be considered for the first time on appeal."). Even if it were properly before this Court, this argument is based on nothing more than unsupported conclusions drawn from the limited screenshots included in Storey's FAC, which all depict checkout pages for the same product. Op. Br. at 13 (citing 2-ER-138–39, 2-ER-141). These screenshots prove nothing, because as the "Delivery Guarantee" page makes clear, Amazon only offers "guaranteed delivery on . . . *select products.*" 2-ER-258. So, the assertion that "guaranteed" *never* appears on any checkout page is not supported by any well pled allegation in Storey's pleadings and is simply the rhetorical musings of his counsel. It is an unwarranted inference he is unentitled to under the law. *DeHoog v. Anheuser-Busch InBev SANV*, 899 F.3d 758, 765 (9th Cir. 2018)

In short, because the word "guaranteed" did not appear at checkout, Storey's order was not subject to any guarantee. Storey cannot alter the Delivery Terms to overcome this requirement, and his contract claim fails for this reason, as well.

29

**B.  The Delivery Terms only provide for guaranteed delivery by a specified "date" and Storey concedes that he received his order on that date.**

The Delivery Terms establish that any delivery guarantee extends only to a delivery *date*, and it is undisputed that Storey received his order on the date he selected. His breach of contract claim begins and ends there. *See, e.g.*, *Haywood*, 2023 WL 4585362, at *4 ("[A] breach of contract claim is not legally cognizable when based on conduct that the contract permits."); *Talyancich v. Microsoft Corp.*, No. C12-1128-JCC, 2012 WL 12941690, at *2 (W.D. Wash. Nov. 2, 2012) ("Where the defendant's conduct is expressly authorized by the terms of the contract, there is no breach."); *Myers v. State*, 218 P.3d 241, 244 (Wash. Ct. App. 2009) (affirming dismissal of contract claim where the contract authorized the conduct at issue).

Storey concedes that the Delivery Terms refer only to a delivery "date" and not a delivery "time." Op. Br. at 18; 2-ER-214. In fact, the word "date" is included no fewer than *nineteen* separate times in the Delivery Terms, while the words "time" and "hour" do not appear at all. For example, the "Guaranteed Delivery Terms and Conditions" page provides that "[i]f we provide a guaranteed delivery *date* on the checkout page, your

30

shipping fees may be refunded if we miss our promised delivery *date*." 2-ER-246 (emphasis added). The "Delivery Guarantees" page provides that "[w]hen guaranteed delivery is available on an order, we'll state this on the checkout page, with the associated delivery *date* and cost. If we provide a guaranteed delivery *date* and a delivery attempt isn't made by this *date*, we'll refund any shipping fees associated with that order." 2-ER-258 (emphasis added). The "Place an Order with Guaranteed Delivery" likewise repeatedly refers to a "delivery *date*," explaining that "[y]our delivery *date* will state 'guaranteed' and be displayed on the final page before you place the order," and "[w]e'll state your confirmed delivery *date* in your order confirmation email." 2-ER-243 (emphasis added). Through these repeated references to a delivery "date," the Delivery Terms make clear that if a customer receives an order on the specified "date," the delivery guarantee is fulfilled. No contrary intent appears in or can reasonably be deduced from these terms. *See, e.g.*, *Hearst Comm'cns, Inc. v. Seattle Times Co.*, 115 P.3d 262, 267 (Wash. 2005) ("We impute an intention corresponding to the reasonable meaning of the words used [and] generally give words in a contract their ordinary, usual, and popular meaning unless the entirety of the agreement clearly demonstrates a contrary

31

intent.").

Unable to point to any time-based guarantee, Storey now asks this Court to rewrite the Delivery Terms based on (1) his subjective interpretation of design elements on the checkout page and (2) extrinsic evidence. These efforts fail as a matter of well-established law.

*First*, Storey suggests that the time windows on the checkout page override the repeated references to delivery "date" that appear throughout the Deliver Contract because, in his view, these time windows are the "most conspicuous" language on the page. Op. Br. at 17. But Storey's subjective interpretation of the checkout page—including what features he inexplicably deems the "most conspicuous"—is irrelevant. *See, e.g.*, *Go2Net, Inc. v. C I Host, Inc.*, 60 P.3d 1245, 1251 (Wash. Ct. App. 2003) (courts examine the parties' objective manifestations, but not their "unilateral or subjective purposes and intentions about the meaning of what is written")*; Hearst*, 115 P.3d at 267 ("[T]he subjective intent of the parties is generally irrelevant if the intent can be determined from the actual words used."). Here, the actual words in the Delivery Terms repeatedly refer to delivery "date" and not delivery "time."

In any event, far from inserting a contradictory term promising

32

delivery by a certain time, the checkout page underscores that customers who pay a fee for expedited delivery are paying for delivery on a specific *date.* Each time window that appears on the page is preceded by the word "Overnight." Op. Br. at 17. Regardless of whether a customer selects "Overnight 4 AM – 8 AM" or "Overnight 7 AM – 11 AM," the delivery fee is the same: "$2.99" for "Fastest Delivery."[2] *Id.* Further, to the extent any language on the checkout page is the "most conspicuous," it is the word "Overnight" which appears repeatedly in bold, colorful font immediately next to the button that a user clicks to select a delivery date. *Id.; see also, e.g., F.T.C. v. EDebitPay, LLC*, 695 F.3d 938, 944 (9th Cir. 2012) (discussing factors including font size, boldness, color, and placement in evaluating conspicuousness of contractual terms on a website). The checkout page is thus entirely consistent with the rest of the Delivery Terms. It does not promise anything other than delivery on a specified date.

*Second*, Storey proffers extrinsic evidence in the form of an email from Amazon advising that his item was "on the way but running late."

---

[2] Storey includes a separate screenshot of the checkout page showing that customers are sometimes given the option to pay $2.99 to select time windows on different dates, such as "Today" and "Tomorrow." Op. Br. at 20; 2-ER-48. This screenshot does not refute and instead further reinforces that the fee is tied to delivery on a specified date.

33

Op. Br. at 4, 19–20; 2-ER-299. But Storey cannot rely on extrinsic evidence to contradict the written terms of his contract with Amazon. *See Hearst*, 115 P.3d at 267 ("surrounding circumstances and other extrinsic evidence" cannot be used "to show an intention independent of the instrument or to vary, contradict, or modify the written word" (citation modified)); *see also, e.g.*, *Nihon Ki-In Go Inst. of the W. v. Nihon Ki-In*, No. C12-0804RSL, 2012 WL 12941689, at *1 (W.D. Wash. June 27, 2012) (courts can only "consider extrinsic evidence regarding terms not included in the writing as long as they are not inconsistent with the written terms"). Even if the email could be considered, it says nothing about any hours-based promise or guarantee. 2-ER-299. Rather, it merely recognizes that Storey's order would be delivered outside of his selected time window.

## C. The Delivery Terms do not provide for any "automatic refund" and instead instructs consumers to contact Amazon customer service for a refund.

Storey repeatedly alleged that Amazon breached the Delivery Terms when it did not *automatically* provide a refund for the delivery fee associated with his purchase. *See, e.g.*, 2-ER-291 (FAC ¶ 4.22). Yet, there is *no* provision in the Delivery Terms that provide for this mechanism,

and instead the contract affirmatively instructs consumers to contact Amazon if they believe any delivery related refund is owed. 2-ER-246 (RJN Ex. 2) (instructing customers to "contact" Amazon to inquire "about a refund of the shipping fees [] paid on [the] order"). Imposing an automatic-refund obligation when the Delivery Terms contemplate none would be tantamount to rewriting the contract. *Seattle Pro. Eng'g Emps. Ass'n v. Boeing Co.*, 991 P.2d 1126, 1131 (Wash. 2000); *see also Spokane Sch. Dist. No. 81 v. Spokane Educ. Ass'n*, 331 P.3d 60, 67 (Wash. Ct. App. 2014) (Washington law requires courts to give "reasonable, fair, just, and effective meaning to all manifestations of intention" when interpreting contract). Storey's refund-based theory of breach was properly dismissed on this ground.[3]

---

[3] Although not necessary to the disposition of his claim for breach, the refund-related theory also fails because Storey did not satisfy the "condition precedent" of requesting a refund from Amazon. "A condition precedent is an act or event that must occur before a duty to perform arises." *See MDY Indus., LLC v. Blizzard Ent., Inc.*, 629 F.3d 928, 939 (9th Cir. 2010), *opinion amended and superseded on other grounds on denial of reh'g*, No. 09-15932, 2011 WL 538748 (9th Cir. Feb. 17, 2011); *Koller v. Flerchinger*, 441 P.2d 126, 128 (Wash. 1968) (same). If a plaintiff has not satisfied a condition precedent, the defendant is discharged from any corresponding contractual duty. *Quinn v. Cherry Lane Auto Plaza, Inc.*, 225 P.3d 266, 272 (Wash. Ct. App. 2009). Assuming *arguendo* that a delivery guarantee applied to Storey's order, and that his delivery was late under the terms of that guarantee, there is still no self-executing

Once again contradicting positions taken below, Storey now argues that a provision related to refunds is not "necessary to give rise to a viable breach of contract claim." Op. Br. at 14. But this is yet another instance of Storey's counsel simply rewriting the record on appeal. Storey consistently alleged and argued that he was entitled to an automatic refund as part of his claim for breach of contract, citing his own pleadings in favor of that position. *See* 2-ER-207 ("Despite its [alleged] failure to deliver as promised, Amazon has never refunded the shipping fees paid by Plaintiff for the 'Fastest Delivery option. FAC ¶¶ 4.24–25.") (Plaintiff's Opp. to Amazon's First Mot. to Dismiss at 8); 2-ER-218 ("Plaintiff plausibly alleges that Amazon's failure to deliver purchases when promised, *and failure to refund shipping fees when it does so, breaches that contract*.") (emphasis added). Storey's belated attempt to abandon his refund-related theory of breach on appeal is little more than a tacit acknowledgment that this theory was baseless to begin with.

## II. THE DISTRICT COURT CORRECTLY DISMISSED STOREY'S CPA CLAIM.

The CPA prohibits "[u]nfair methods of competition and unfair or

---

duty imposed on Amazon to automatically refund shipping charges.

36

deceptive acts or practices in the conduct of any trade or commerce." RCW 19.86.020. "[A] CPA claimant must establish five elements: (1) an unfair or deceptive act or practice (2) in trade or commerce (3) that affects the public interest, (4) injury to plaintiff's business or property, and (5) causation." *Wright v. Lyft, Inc.*, 406 P.3d 1149, 1153 (Wash. 2017). Failure to satisfy any of these elements is "fatal" to a plaintiff's claim. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins.*, 719 P.2d 531, 539 (Wash. 1986).

Storey's CPA claim failed to satisfy at least two of these required elements. He did not plausibly allege (1) any deceptive or unfair practice or (2) causation. 1-ER-6–11; 2-ER-93–95. Each of these defects provides an independently sufficient basis to affirm.

### A. Storey did not plead any unfair or deceptive act.

#### 1. It is not unfair or deceptive under the CPA for a party to abide the terms of its contract.

An act is unfair or deceptive if it involves "a representation, omission or practice that is likely to mislead a reasonable consumer." *Young v. Toyota Motor Sales, U.S.A.*, 472 P.3d 990, 994 (Wash. 2020) (citation modified). In cases like this one, where the alleged deceptive conduct arises out of the parties' contract, CPA authority consistently holds that

it is *not* unfair or deceptive to abide the contract's terms. *See, e.g.*, *In re Amazon Serv. Fee Litig.*, No. C22-0743TL, 2024 WL 3460939, at \*8–9 (W.D. Wash. July 18, 2024) (finding no deception based on supposedly hidden fees that were disclosed at checkout and permitted by the terms and conditions to which subscribers had agreed), *aff'd*, 2025 WL 2268252; *Haywood*, 2023 WL 4585362, at \*7 ("[E]xercising a right that a contract permits and is fully disclosed to the parties in advance is not an unfair or deceptive act or practice."); *Lowden v. T-Mobile USA, Inc.*, No. C05-1482MJP, 2009 WL 537787, at \*3 (W.D. Wash. Feb. 18, 2009) (finding no deception where contract "sufficiently disclosed" the challenged conduct), *aff'd*, 378 F. App'x 693 (9th Cir. 2010); *Smale v. Cellco P'ship*, 547 F. Supp. 2d 1181, 1189 (W.D. Wash. 2008) (finding no deception where defendant "disclosed from the inception of its relationship with each [p]laintiff that it could charge additional fees").

As the district court explained, this is true even where the consumer claims he did not read the contract in full. 1-ER-8 ("Amazon's failure to abide by promises it did not make with respect to 'Guaranteed Delivery' is not deceptive, even if Storey did not read all of the terms of his contract with Amazon before placing his order.").

38

Thus, it is settled CPA law that a defendant does not engage in unfair or deceptive conduct when it merely abides the terms of its contract with the plaintiff. *See, e.g.*, *Lowden*, 2009 WL 537787, at \*2; *Smale*, 547 F. Supp. 2d at 1186, 1188–89.

This principle has been affirmed as to Amazon specifically, with courts routinely dismissing tag along CPA claims that merely reassert a failed claim for breach of contract. *Haywood*, 2023 WL 4585362, at \*7; *Marquez*, 69 F.4th at 1274–75 (affirming dismissal of CPA claim where Amazon followed terms of contract that were disclosed to consumers). Indeed, this Court recently affirmed the dismissal of a CPA claim in a case challenging conduct that Amazon's "Prime" membership agreement specifically permitted. *In re: Amazon Services Fee Litig.*, 2025 WL 2268252, at \*1. The court reasoned that Amazon's conduct in compliance with its agreement was neither deceptive nor unfair under the CPA. *Id.* The same outcome is warranted here.

### 2. Amazon did not engage in any unfair or deceptive act by following its contract.

On appeal, Storey argues Amazon committed one of two alternative deceptive or unfair acts under the CPA. First, he asserts that Amazon did not disclose that "guaranteed" delivery is limited to orders where

39

"guaranteed" appears on the customer's checkout page. Op. Br. at 22. Second, he argues that the presentation of multiple time windows at checkout was deceptive in that it "induce[d]" him to select one of those windows. *Id.* at 24. Both contentions are easily dispensed with by information disclosed to Storey and the consistent body of CPA law that rejects efforts to recast contract compliance as an unfair or deceptive act.

*First,* Storey's argument that he was not advised that the word "guaranteed" must appear at checkout for that guarantee to apply, Op. Br. at 22, is contradicted by his own pleadings. Storey himself repeatedly alleged that the page entitled "Delivery Guarantees" formed part of his Delivery Terms with Amazon. 2-ER-157 (SAC ¶ 6.7) (referring to the "Delivery Guarantees" page as part of Amazon's "promise" to him); *id.* at 158 (SAC ¶ 6.9) ("Delivery Guarantees" page part of Storey's CPA claim); *see also* 2-ER-289–90 (FAC ¶ 4.2) (same). This "Delivery Guarantees" page states in plain language: "When guaranteed delivery is available on an order, *we'll state this on the checkout page*, with the associated delivery date and cost." *Id.* (emphasis added).

So, contrary to what Storey now argues, Amazon expressly advised him of this requirement and Storey pled that language as central to his

40

contract and CPA claim. *Id.*; *see also* Op. Br. at 4 (Storey arguing that the "Delivery Guarantees" page formed "terms governing [his] purchase"). Amazon did not engage in an unfair or deceptive act under the CPA when it followed the Delivery Terms themselves. *In re: Amazon Services Fee Litig.*, 2025 WL 2268252, at *1; *Haywood*, 2023 WL 4585362, at *7; *Marquez*, 69 F.4th at 1274–75.

Storey's main rejoinder is to insist, without reference to legal authority or any citation to the record, that Amazon did not "alert" Storey to the full content of the Delivery Terms which his lawyers now say were "buried." Op. Br. at 22–23. This is nonsense. Storey's own pleadings relied on those very terms as central to *both* his breach of contract claim and his CPA claim. 2-ER-291 (FAC ¶ 4.4). Moreover, as the district court cogently explained in its First Dismissal Order, the full Delivery Terms were presented to Storey, they were easily understandable, and they contradicted his claimed CPA theory of deception. *See* 1-ER-24 ("[Storey's] theory [of deception] assumes that reasonable consumers do not read all of the terms and conditions of their contracts or should not be expected to do so. Storey cites no authority supporting this assumption. . . . The 'Guaranteed Delivery' terms at issue are conspicuous and written in plain

41

English.").

*Second*, it was not deceptive or unfair for Amazon to offer hours-based delivery windows as part of Storey's checkout. Storey's checkout page stated that for $2.99 he would receive "Overnight" delivery, which is exactly what Amazon provided. 2-ER-292; 2-ER-300–01 (SAC ¶¶ 4.8, 4.21, 4.22). The additional time windows he was shown at checkout did not contemplate delivery until the next day. 2-ER-293 (SAC ¶ 4.11). And the Help & Customer Service pages that comprised Storey's Delivery Terms stated nineteen separate times that only the "date" of delivery was subject to any guarantee. 2-ER-234–59 (RJN Exs. 1, 2, 5).

Reasonable consumers are presumed to review the terms that govern their transactions and understand plain limits that apply. *See Haywood*, 2023 WL 4585362, at *7 ("Reasonable consumers, after reading the Conditions and Guidelines, would understand that Amazon reserves the right to remove reviews or terminate access to services in Amazon's sole discretion."); *Smale*, 547 F. Supp. 2d at 1186 ("[A]ny reasonable consumer reading the Agreement would realize that Verizon reserved the right to assess surcharges . . . ."). As noted by the district court, the checkout page links to the Help & Customer Service pages, which contain the repeatedly

42

disclosed "date" limitation as to delivery, with clear and conspicuous hyperlinks. 1-ER-24 (First Dismissal Order at 12 n.6) (explaining that these disclosures are "clear, conspicuous, and do not require legal training to understand").

Storey's insistence that this "date" limitation should also have been included on the checkout page as well, Op. Br. at 25, is simply a demand that Amazon offer this information in his preferred format. This is *per se* inadequate to plead a deceptive or unfair act or practice. *See Cole v. Keystone RV Co.*, No. C18-5182 TSZ, 2021 WL 3111452, at *5 (W.D. Wash. July 22, 2021) ("At its root, [p]laintiff['s] argument is that [defendant] did not disclose the information to [her] in [her] preferred method, which does not itself constitute a deceptive act under the CPA."), *aff'd*, No. 21-35701, 2022 WL 4234958 (9th Cir. Sept. 14, 2022).

### B. Storey did not plead causation and has also waived that issue on appeal by failing to argue it.

Causation is an essential element of a CPA claim, which requires the plaintiff to plausibly allege "but for the defendant's unfair or deceptive act or practice the plaintiff's injury would not have occurred." *Young*, 472 P.3d at 996; *see also Babrauskas v. Paramount Equity Mortg.*, No. C13-0494-RSL, 2013 WL 5743903, at *4 (W.D. Wash. Oct. 23, 2013) (CPA

43

"but for" causation not satisfied where plaintiff is the cause of the alleged injury). Storey's claimed injury was the payment of a $2.99 delivery fee. 2-ER-148 (SAC ¶ 4.23). Yet, Storey was the cause of this injury, not Amazon, because it was Storey who elected not to seek any refund. 1-ER-10 (Second Dismissal Order at 8) (noting that it was "undisputed" that Storey failed to seek a refund from Amazon).

The district court expressly considered Amazon's causation argument and ruled that it was an alternative basis for full dismissal of Storey's CPA claim. 1-ER-11. ("Moreover, even if the Court were willing to make such an inference [that a deceptive act occurred], the [CPA] claim would nonetheless fail for lack of causation: because Storey did not request a refund, his injury could not be linked to Amazon's alleged act or practice of refusing to provide refunds for late deliveries upon request." (citing *Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.*, 170 P.3d 10, 22 (Wash. 2007))).

Storey's Opening Brief does not challenge the district court's CPA causation analysis. *See generally* Op. Br. at 21–24. Storey has thus waived any argument as to the correctness of that aspect of the district court's order, and dismissal of the CPA claim can be affirmed on that

44

basis alone. *See, e.g., United States v. Kama*, 394 F.3d 1236, 1238 (9th Cir. 2005) ("Generally, an issue is waived when the appellant does not specifically and distinctly argue the issue in his or her opening brief.").[4]

But even if this Court excused Storey's waiver, the district court's causation analysis was correct. It was undisputed that Storey never requested a refund from Amazon. 1-ER-10 (Second Dismissal Order at 8) ("[I]t is undisputed that Storey could have requested a refund of the shipping fee based on that delay, and chose not to."). Storey's allegations that the process for obtaining those refunds was too "onerous" was thus pure speculation, because he never made that attempt. Accordingly, Amazon's refund process could not possibly have caused his injury. *See, e.g., Taylor v. Amazon.com, Inc.*, No. 2:24-CV-00169-MJP, 2024 WL 3326430, at *4–5 (W.D. Wash. July 8, 2024) (dismissing CPA claim for lack of causation where plaintiffs failed to allege they interacted with the portion of

---

[4] Because this issue was not challenged in Storey's Opening Brief, he is likewise barred from raising it on reply. *See Cedano-Viera v. Ashcroft*, 324 F.3d 1062, 1066 n.5 (9th Cir. 2003) (declining to "consider new issues raised for the first time in a reply brief"); *Bazuaye v. I.N.S.*, 79 F.3d 118, 120 (9th Cir. 1996) ("Issues raised for the first time in the reply brief are waived"); *Thompson v. Comm'r*, 631 F.2d 642, 649 (9th Cir. 1980) ("The general rule is that appellants cannot raise a new issue for the first time in their reply brief.").

Amazon's website complained of); *Universal Life Church Monastery Storehouse v. King*, No. 2:19-CV-00301-RSL, 2019 WL 2524993, at *3 (W.D. Wash. June 19, 2019) (same) ("Mere possibility of injury is not enough."); *Gray v. Amazon.com Inc.*, No. 23-35377, 2024 WL 2206454, at *2 (9th Cir. May 16, 2024) (same) (affirming lower court's dismissal of CPA claim for lack of causation).

Storey further argued that any request for a refund would have been rejected or failed, but the district court correctly repudiated this argument as an "unwarranted inference" that Storey was unentitled to under Rule 12. 1-ER-11 ("[I]t is undisputed that Storey himself did not request a refund, and Storey would have to resort to speculation to allege what Amazon would have done when faced with a refund request that he did not make. The Court declines to draw such inferences here." (citing *DeHoog*, 899 F.3d at 765)).[5]

---

[5] Storey also tried to cast Amazon's failure to automatically provide him a refund as an unfair or deceptive act under the CPA. 1-ER-007. The district court rejected this argument, too, because Amazon never agreed to provide refunds automatically; it instead instructed consumers to seek a refund if their delivery was untimely. 1-ER-10 (citing *Sheilds v. Fred Meyer Stores Inc.*, 741 F. Supp. 3d 915, 930–31 (W.D. Wash. 2024), for the proposition that it is not an unfair act under the CPA to require a consumer to request a refund if one may be owed). Storey has not challenged this ruling on appeal and so has waived any argument as to its

## CONCLUSION

For the foregoing reasons, Amazon respectfully requests that this Court affirm dismissal and the district court's entry of judgment in Amazon's favor.

Dated: October 10, 2025    Respectfully submitted,

**PERKINS COIE LLP**

/s/ *Charles C. Sipos*
　　Charles C. Sipos
　　Lauren J. Tsuji

*Attorney for Defendant - Appellees*
*Amazon.com, Inc., Amazon.com*
*Services, LLC*

---

correctness.

47

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Ninth Circuit R. 32-1(a) because this brief contains 9,744 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook type.

Dated: October 10, 2025                    /s/Charles C. Sipos
                                           Charles C. Sipos